UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT H. BURCH, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

vs.

SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,

    Defendants.

Case No. 1:08-CV-01029-WHP

---

RUSSELL PATRICK, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

vs.

SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,

    Defendants.

Case No. 1:08-CV-02463-WHP

---

**RESPONSE OF SLM VENTURE TO CROSS-MOTIONS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**INTRODUCTION**

Before this Court are three motions by class members seeking (a) consolidation of two class actions alleging that SLM Corporation ("Sallie Mae") and its executives violated the Securities Exchange Act of 1934, and (b) appointment as Lead Plaintiff.[1] The Westchester Movants, comprised of Westchester Capital Management, Inc. ("WCM") and Green & Smith Investment Management L.L.C. ("Green & Smith"), submit that they have suffered losses of approximately $38 million on their investments in Sallie Mae. SLM Venture has demonstrated losses of $3.9 million. Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW 80") asserts that it suffered more than $524,000 in losses. Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Westchester Movants have the largest financial interest and are presumed to be the "most adequate plaintiff" to represent the class.

The presumption of adequacy is rebutted here, however, because the Westchester Movants cannot fairly and adequately protect the interests of the class as they are subject to unique defenses that threaten to detract from their representation of the class. In particular, in a January 15, 2008 statement to investors in the Merger Fund, one of the five investment funds that the Westchester Movants advise and manage, Frederick W. Green, the President of WCM and a member of Green & Smith, candidly explained that the fund's losses in Sallie Mae investments were the product of bad business decisions by Sallie Mae executives rather than fraud. These public concessions are inconsistent with the position the Westchester Movants now attempt to take in the litigation and subject them to serious credibility challenges. Defendants can be expected to argue at class certification and trial that the Westchester Movants lack credibility, that they are attempting to use the securities laws to recover losses resulting from flawed investment decisions rather than fraud, and that the Westchester Movants appear to pursuing this lawsuit at the direction of counsel rather than out of a genuine belief that they were defrauded.

---

[1] All movants agree that *Burch v. SLM Corporation, et al.*, Case No. 1:08-cv-01029-WHP, and *Patrick v. SLM Corporation, et al.*, Case No. 1:08-cv-02464-WHP, should be consolidated pursuant to Fed. R. Civ. P. 42(a).

The Westchester Movants cannot adequately represent class members in this action for violation of the federal securities laws, having described the circumstances surrounding their investment losses in terms that cannot be reconciled with claims of securities fraud.

In contrast, SLM Venture purchased Sallie Mae stock in reliance on defendants' statements—statements which it believed to be true at the time, but which in fact were recklessly or deliberately false and misleading when they were made. SLM Venture believes that it suffered damages as a result of defendants' fraud, not mismanagement. As a result, SLM Venture will fairly and adequately represent the interests of the class and is not subject to the unique defenses that will plague the Westchester Movants. Having sustained losses far greater than SMW80, SLM Venture should be appointed as Lead Plaintiff.

## FACTUAL BACKGROUND

As described in the *Burch* Complaint, this class action alleges that Sallie Mae, a student loan originating and servicing company, and its executives engaged in a scheme to deceive investors about the company's business and prospects which caused those investors to purchase Sallie Mae common stock at artificially inflated prices between January 18, 2007 and January 3, 2008. (*Burch* Complaint, ¶¶ 3, 21.)

The Complaint describes a complex scheme involving a variety of false statements, misleading representations and omissions by the defendants during the class period. Among other things, defendants are alleged to have: materially misstated Sallie Mae's financial results by inadequately reserving for losses associated with loans made to subprime borrowers in non-traditional schools; materially misrepresented Sallie Mae's business and prospects by failing to disclose the extent of its anticipated losses resulting from defaults in its non-traditional loan portfolio; and materially misstated Sallie Mae's earnings projections by failing to accurately account for legislative changes that reduced the subsidies that it received from the federal government, increased lender risks, and required Sallie Mae to tighten its lending standards. (*Id.*, ¶ 12.) The Complaint alleges that, in light of these undisclosed material facts, Sallie Mae's

projected earnings for 2007 were made with reckless or intentional disregard for the truth when they were announced. (*Id.*)

The Complaint further alleges that defendants were motivated to and did make these materially false and misleading statements which artificially inflated Sallie Mae's share price in order to ensure a continued source of capital through the company's use of equity forward contracts, and to consummate an acquisition of the company by an investor group headed by J.C. Flowers & Co. ("Flowers"). (*Id.*, ¶¶ 23-25.) "In a move to consummate the merger agreement, Sallie Mae misrepresented the Company's business and prospects. These false statements about Sallie Mae's business were extremely important to the market and made the Company an attractive acquisition target." (*Id.*, ¶ 26.) The defendants were further motivated to consummate the acquisition because they stood to gain substantially from it. Upon closing the deal, Chief Executive Officer Albert Lord was to receive a cash payment of approximately $225 million, Chief Financial Officer C.E. Andrews was to receive $16.1 million, and Executive Vice President Robert Autor was to receive $16 million. (*Id.*, ¶ 35.)

According to the Complaint, Sallie Mae's share price declined beginning in the latter half of the class period when the "truth about the company's business operations, finances, business metrics, and future business and financial prospects began to enter the market with a series of partial disclosures and revelations . . . which were accompanied by denials and continued misrepresentations by defendants." (*Id.*, ¶ 84.) Sallie Mae's share price bottomed out when (a) the Flowers acquisition collapsed, (b) the company disclosed a significant shortage of capital, and (c) the company announced that it would revise its business model to limit loans to non-traditional borrowers in light of its exposure to the subprime market and reduced federal loan subsidies. (*Id.*, ¶¶ 47-55.)

The *Burch* Complaint was filed on January 31, 2008. On March 31, 2008, class members the Westchester Movants, SLM Venture, and SMW80 filed three separate motions for consolidation of actions, appointment as Lead Plaintiff and approval of selection of counsel.

3

**ARGUMENT**

I. **THE PRESUMPTION THAT THE WESTCHESTER MOVANTS ARE THE "MOST ADEQUATE PLAINTIFF" IS REBUTTED HERE, BECAUSE THEY CANNOT FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS, AS THEY ARE SUBJECT TO UNIQUE DEFENSES.**

The PSLRA establishes the procedure for appointing the Lead Plaintiff. The Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). "A party is entitled to the statutory presumption of being the most adequate plaintiff if it can show that it: (aa) filed an initial complaint or timely moved for appointment as lead plaintiff; (bb) has the largest financial interest in the relief sought by the class; and (cc) satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure." *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). The presumption that a party is the most adequate plaintiff may be rebutted only upon proof that the party "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the Westchester Movants have the largest financial interest. Although the Court may presume that the Westchester Movants are the "most adequate plaintiff," that presumption is rebutted here in light of evidence showing that the Westchester Movants do not believe that they were the victim of a fraud.

As described in the *Burch* Complaint, the theory of this case is that defendants made false statements about Sallie Mae's business and prospects and failed to disclose adverse material facts about the company. The misrepresentations at issue in the litigation include claims that Sallie Mae and its CEO Albert Lord falsely represented that they had an enforceable agreement with the Flowers group. These misrepresentations and omissions deceived investors, causing them to purchase Sallie Mae stock at artificially inflated prices. (*See Burch* Complaint, ¶¶ 3, 12-

4

13, 21.) The causes of action being pursued require proof of defendants' actual intent to deceive or conscious recklessness as to the truth. *See Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000).

At least one recent written statement by the Westchester Movants is conflict with the theory of the case. Frederick W. Green is the President of WCM and a member of Smith & Green. (*See* Ex. A at 9 to Levine Decl.)[2] On January 15, 2008, Green sent a letter to shareholders of the Merger Fund, one of the five funds for which WCM is the financial advisor, explaining why the Merger Fund experienced losses in the fourth quarter of 2007. (*See* Ex. B to Levine Decl.) Green wrote that Sallie Mae was the Merger Fund's "biggest loser" for the quarter. (*Id.* at 3.) The Merger Fund, which specializes in merger arbitrage by investing in companies involved in pending takeovers and reorganizations (*see* Ex. C to Levine Decl.), invested in Sallie Mae following the April 16, 2007 announcement by the company that Flowers would acquire it for $25 billion. (*See* Kaboolian Decl., Ex. B; *Burch* Complaint, ¶ 32.)[3] The Merger Fund sustained losses following the collapse of the merger with Flowers. (*See* Levine Decl. Ex. B at 3-4.)

Although the merger with Flowers was dependent upon the accuracy of Sallie Mae's forecasted business and prospects—projections which are challenged in this case as having been "at a minimum reckless" (*Burch* Complaint, ¶ 12(g))—Green does not ascribe the Merger Fund's losses to defendants' conscious recklessness or deliberate fraud. Instead, Green attributes the Merger Fund's losses in Sallie Mae to mismanagement by the company's executives. The January 15, 2007 letter describes the conduct of defendant Albert Lord, Sallie Mae's Chief Executive Officer, as "a major strategic blunder," a "folly," and "ill-timed." (Levine Decl., Ex.

---

[2]     "Levine Decl." refers to the Declaration of Jonathan K. Levine In Support Of The Response Of SLM Venture To Cross-Motions For Consolidation, Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel, submitted herewith.

[3]     "Kaboolian Decl." refers to the Declaration Of Nancy Kaboolian In Support Of Westchester Capital Management, Inc. And Green & Smith Investment Management L.L.C.'s Motion For The Consolidation Of All Related Cases; To Be Appointed Lead Plaintiffs And For Approval Of Lead Plaintiffs' Selection Of Lead Counsel (Doc. No. 12.).

A at 4.) Nowhere does Green suggest to WCM's own investors that their losses in SLM were the result of fraud. (*Id.*)

Green's account is thus inconsistent with the Westchester Movants' present claim that they consider themselves victims of fraud. Defendants can be expected to raise this significant inconsistency on motions to dismiss, during class certification proceedings and at trial. Such an attack promises to present serious and distracting challenges to the Westchester Movants' credibility, create individualized defenses, and impair their ability to fairly and adequately represent the interests of the class. *See Savino v. Computer Credit*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming denial of class certification where representative "offered differing accounts about the letters that form the very basis for his lawsuit surely [which] would create serious concerns as to his credibility at any trial"); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (Even if repudiated testimony "was the product of an innocent mistake, it subjects [plaintiff's] credibility to serious question," and is a basis for a finding of inadequacy.) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549-50 (1949) (class representative is a fiduciary, and interests of the class are "dependent upon his diligence, wisdom and integrity")); *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 390 (N.D. Ill. 2006) ("Because the lead plaintiffs will act as fiduciaries for the absent plaintiffs, the court can examine their integrity and credibility in determining whether they are suitable representatives for the class. . . . [A] plaintiff with credibility problems does have interests antagonistic to the class. . . . Courts have denied such plaintiffs the privilege of representing their putative classes.") (citations and quotations omitted); *Darvin v. International Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) ("[I]nconsistent testimony could create serious problems with respect to plaintiff's credibility and could become the focus of cross examination and unique defenses at trial, to the detriment of the class. These credibility problems are a basis for denying plaintiff's motion to be named class representative."). That the Westchester Movants are subject to unique defenses and are inadequate to represent the interests of the class rebuts the presumption that they are the "most adequate plaintiff."

6

In addition, as Green's letter shows that the Westchester Movants believe they lost money as a result of poor management by Sallie Mae's CEO, their motion for appointment as Lead Plaintiff suggests they may be motivated more by a desire to mitigate market losses than by a sincerely held belief they were the victims of fraudulent conduct. The heightened standards for pleading securities fraud under the PSLRA were intended to preclude investors from doing what the Westchester Movants can expect to be accused of here: suing to mitigate losses attributable to mismanagement or failed investment strategies rather than fraud. *See* H.R. Conf. Rep. No. 104-369, at 31 (1995) (The PSLRA was enacted to prevent "the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer."), *cited in Novak*, 216 F.3d at 306. Defendants also can be expected to argue that the Westchester Movants are serving at the direction of counsel rather than out of a firmly-held conviction that they have been defrauded. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. ___, 127 S. Ct. 2499, 2007 U.S. LEXIS 8270, ***5 (June 21, 2007) (describing the "PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims").

As the Westchester Movants can expect to be subjected to substantial challenge on credibility grounds if they attempt now to plead claims inconsistent with their prior statements to their clients, there is a serious question whether they will vigorously pursue on behalf of the class claims such as those arising from misrepresentations made in connection with the Flowers acquisition and the Sallie Mae earnings projections on which that transaction was premised. Appointing the Westchester Movants as Lead Plaintiff therefore unnecessarily threatens to prejudice the class and is thus inconsistent with the goals of the PSLRA. As a result, the Court should deny the Westchester Movants' motion for appointment as Lead Plaintiff.

II. **SLM VENTURE IS ADEQUATE TO REPRESENT THE CLASS AND IS NOT SUBJECT TO UNIQUE DEFENSES.**

As described in the moving papers, SLM Venture is a joint venture of five investors formed for the purpose of investing in Sallie Mae securities. Like the Westchester Movants,

7

SLM Venture purchased Sallie Mae stock in anticipation of the company's merger with Flowers. In making its investment decisions, SLM Venture relied on the integrity of the market, as well as Sallie Mae's representations regarding its projected earnings, business and prospects, and the enforceability of the Flowers acquisition agreement, all of which were critical to the success of the merger. The decline in Sallie Mae's share price following revelations that those representations were materially false and misleading caused SLM Venture to suffer $3.9 million in losses. These substantial losses are more than sufficient to align the interests of SLM Venture with those of the class.

SLM Venture already has demonstrated that it satisfies the typicality requirement under Rule 23, as its claims against defendants arise from the same series of events and are based on the same legal theories as the claims of all other class members. (*See* SLM Venture Opening Brief at 7-8 (citing *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *54 (S.D.N.Y. May 27, 2004)).[4] SLM Venture has also shown that it is adequate to represent the class in that it has no interests antagonistic to class members and has retained competent and experienced counsel to prosecute this class action. (*Id.* at 8 (citing *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 131 (E.D.N.Y. 2003).)

In addition, SLM Venture does not suffer from any of the infirmities that can be expected to afflict the Westchester Movants. Unlike the Westchester Movants, SLM Venture has not gone on record ascribing its losses to corporate mismanagement. Instead, SLM Venture believes that Sallie Mae and its executives knowingly or recklessly issued fraudulent earnings projections and manipulated the market for its securities in connection with the failed Flower's acquisition. SLM Venture is committed to litigating these claims vigorously. In contrast to the Westchester Movants, SLM Venture is not subject to unique defenses, will not need to defend against attacks

---

[4] "SLM Venture Opening Brief" refers to the Memorandum Of Law In Support Of The Motion Of SLM Venture For Consolidation, Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel (Doc. No. 17.)

8

on its credibility for having made statements that contradict the theory of the case, and is more than capable of fairly and adequately representing the interests of the class.

SLM Venture respectfully submits that the magnitude of the Westchester Movants' loss does not overcome their shortcomings as class representatives. For that reason, the Court should decline to appoint the Westchester Movants as sole Lead Plaintiff, and instead appoint SLM Venture as Lead Plaintiff. Alternatively, in light of the concerns described here, the Court has the discretion to broaden the representation of the class by appointing SLM Venture and the Westchester Movants collectively as Lead Plaintiff. *See Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (appointing multiple applicants as co-lead plaintiffs and their respective counsel as co-lead counsel, where individual applicants may be subject to "special defenses"). Appointing both movants will ensure that the interests of the class are fairly and adequately protected and avoid any due process concerns that may arise if the class representative is found to be inadequate. *See Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 171 (2d Cir. 2006) ("due process requires fair representation of absent parties (ultimately called 'adequate' representation) . . . [and enables] an absent party denied such representation [to] collaterally attack the class action judgment") (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).

## CONCLUSION

For the foregoing reasons, the Court should consolidate the related actions, appoint SLM Venture as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B), and approve its selection of Girard Gibbs LLP as Lead Counsel.

DATED: April 17, 2008                    Respectfully submitted,

**GIRARD GIBBS LLP**

By:   *Jonathan K. Levine*
      Jonathan K. Levine (JL-8390)

9

Daniel C. Girard
Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4500
Facsimile:  (415) 981-4846

**Proposed Lead Counsel**


Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY  10004
Telephone:  (212) 584-0757
Facsimile:  (212) 584-0799

**Local Counsel**

10