UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT H. BURCH, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,<br><br>      Defendants. | Civil Action No. 08-cv-01029 (WHP)<br><br>ECF Case |
| RUSSEL PATRICK, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,<br><br>      Defendants. | Civil Action No. 08-cv-02463 (WHP)<br><br>ECF Case |

**REPLY MEMORANDUM OF WESTCHESTER CAPITAL MANAGEMENT, INC. AND GREEN & SMITH INVESTMENT MANAGEMENT L.L.C. IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. II

I.   INTRODUCTION ...................................................................................................... 1

    A.   SLM Venture and SMW 80 Have Failed to Rebut the Presumption that the Westchester Movants are the Most Adequate Lead Plaintiffs ..................... 3

        1. The Westchester Movants Have Standing And Authority to Pursue This Lawsuit............................................................................................ 3

        2. Statements By The Westchester Movants Do Not Rebut The Presumption............ 7

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Alfaro v. Caprock Common. Corp.*,
    Civil Action No. 3:00-CV-1613-R, 2000 U.S. Dist. LEXIS 21743
    (Dec. 8, 2000 N.D. Tex.) .................................................................................................. 4

*Blue Chips Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ........................................................................................................ 4

*Casden v. HPL Techs., Inc.*,
    No. C-02-3510 VRW, 2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003) .............. 5

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y.2004) ...................................................................................... 3

*Darvin v. International Harvester Co.*,
    610 F. Supp 255 (S.D.N.Y. 1985) ................................................................................... 9

*Ezra Charitable Trust v. Rent-Way, Inc.*,
    136 F. Supp. 2d 435 (W.D. Pa. 2001) ............................................................................. 5

*Hevesi v. Citigroup, Inc.*,
    366 F.3d 70 (2d Cir. 2004) .............................................................................................. 8

*In re Bank One S'holders Class Action*,
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ................................................................................ 7

*In re eSPEED, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ...................................................................................... 7

*In re Global Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003) ............................................................................ 7

*In re Leapfrog Enters. Secs. Litig.*,
    2005 U.S. Dist. LEXIS 40994, No. 03 Civ. 5421 (RMW), 2005 WL 3801587,
    (N.D. Cal. Nov. 23, 2005) ............................................................................................... 8

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004) ............................................................................. 7

*In Re Smith Barney Transfer Agent Litigation*,
    05 Civ. 75, 83, 2006 U.S. Dist. LEXIS 19728 (S.D.N.Y April 17, 2006) ............. 2, 3, 7, 10

*In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*,
    209 F.R.D. 353 (S.D.N.Y. 2002) ................................................................................ 6

*Kline v. Wolf*,
    702 F. 2d 400 (2d Cir. 1983) ...................................................................................... 9

*Olsen v. New York Comty. Bancorp, Inc.*,
    233 F.R.D. 101 (E.D.N.Y. 2005) ................................................................................ 4

*Pope v. Harvard Bancshares, Inc.*,
    240 F.R.D. 383 (N.D. Ill. 2006) ............................................................................... 10

*Roth v. Knight Trading Group., Inc.*,
    228 F. Supp. 2d 524 (D.N.J. 2002) ............................................................................ 6

*Savino v. Computer Credit Inc.*,
    164 F. 3d 81 (2d Cir. 1998) ........................................................................................ 9

*Smith v. Suprema Specialties, Inc.*
    206 F. Supp. 2d 627 (D.N.J. 2002) ............................................................................ 6

*Strougo v. Brantley Capital Corp.*,
    243 F.R.D. 100 (S.D.N.Y. 2007) ................................................................................ 3

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) ....................................................................... 5

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................... 4, 5, 8

*Yates v. Open Joint Stock Co. "Vimpel-Commcations"*,
    No. 04 Civ. 9742 (NRB), 2005 U.S. Dist. LEXIS 7717, (S.D.N.Y. Apr. 29, 2005) .......... 9

I.  **INTRODUCTION**

The Westchester Movants submit this memorandum in further support of their motion to be appointed Lead Plaintiffs, and in reply to the oppositions filed by SLM Venture and SMW 80. Both SLM Venture and SMW 80 concede that the Westchester Movants, with losses of $37,819,479.89 on a FIFO basis and $38,150,550.66 on a LIFO basis, have the largest financial interest. Recognizing that the Westchester Movants are the presumptive Lead Plaintiffs under the PSLRA, the competing movants assert arguments based on pure speculation to try to establish that the Westchester Movants are not adequate to lead this litigation. Those arguments fail, however, because neither SLM Venture nor SMW 80 has presented any *proof* that the Westchester Movants will not adequately represent the Class or are subject to unique defenses.

SMW 80 baldly and erroneously asserts that the Westchester Movants do not have authority to bring this suit. Memorandum in Further Support of Motion of Sheet Metal Workers' Local No. 80 Pension Trust Fund For Consolidation, Appointment as Lead Plaintiff and For Approval of Selection of Lead Counsel and in Opposition to the Competing Motions at 5 ("SMW 80 Opp. at __"). To the contrary, the sworn statement of Roy Behren, Chief Compliance Officer of the Westchester Movants, submitted in support of the Westchester Movants' Lead Plaintiff motion clearly establishes that the Westchester Movants have full authority and the legal right to sue to recover losses for their funds that have invested in SLM securities. Indeed, SMW 80 concedes that Westchester Capital since January 2007 has been serving as a lead plaintiff in this District before the Honorable Naomi Reice Buchwald in the IMAX securities class action (*Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007)), without any challenge to its standing. SMW 80 disregards Mr. Behren's sworn statement and asks the Court to accept its unsupported assertions premised upon pure speculation. The case law in this District and

1

elsewhere unequivocally holds that investment advisors who demonstrate that they have complete investment authority over trades made in the funds they advise and full power and authority to pursue legal remedies in connection with investments made by the funds are adequate to serve as lead plaintiffs.

SLM Venture's argument that the Westchester Movants are inadequate because they may not be able to assert certain potential claims misrepresents the facts at issue, is unsupported by the case law in this District, and is premature at this stage of the litigation. Response of SLM Venture To Cross Motions for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel at 2 ("SLM Venture Resp. at __"). SLM Venture argues that the substance of Westchester Movant G&S's communication with clients contradict allegations concerning Defendants' fraudulent conduct. This too amounts to pure speculation and, as such, is insufficient to rebut the presumption afforded to the Westchester Movants.

As SLM Venture concedes, the Burch Complaint alleges, "a complex scheme involving a variety of false statements, misleading representations and omissions by the defendants during the class period." SLM Venture Resp. at 2. SLM Venture is asking the Court to identify every possible claim that may be asserted in the consolidated amended complaint and determine that the chosen lead plaintiff must have standing to bring every such claim. On this motion, no candidate is required by the PSLRA or by Rule 23 to analyze every potential claim and allegation that might be included in a consolidated amended complaint nor to establish its individual standing to bring every such claim. This Court in 2006 rejected an analogous attack on an otherwise adequate proposed lead plaintiff. *In Re Smith Barney Transfer Agent Litigation*, 05 Civ. 75, 83, 2006 U.S. Dist. LEXIS 19728 at *10-13 (S.D.N.Y April 17, 2006).

For the reasons set forth below, the arguments made by SLM Venture and SMW 80 are flawed and the Court should appoint the Westchester Movants as the Lead Plaintiffs.

A.  **SLM Venture and SMW 80 Have Failed to Rebut the Presumption that the Westchester Movants are the Most Adequate Lead Plaintiffs**

The Westchester Movants are presumptively the most adequate plaintiff. This presumption may be rebutted only upon ***proof*** that they will not fairly and adequately protect the interests of the class; or are subject to unique defenses. 15 U.S.C. 78u-4(a)(3)(B)(iii)(II). It is on this basis that the overwhelming majority of courts have rejected speculative challenges akin to those asserted here. *See, e.g., Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) (rejecting challenge, stating that "[s]peculation and conjectures from one interested party" was insufficient to establish proof of presumptive plaintiff's inadequacy); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y.2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.") Neither SLM Venture nor SMW 80 has provided any proof to rebut the presumption that the Westchester Movants are the most adequate lead plaintiffs.

1.  **The Westchester Movants Have Standing And Authority to Pursue This Lawsuit**

SMW 80 attempts to rebut the presumption by arguing that, as investment advisory firms, the Westchester Movants lack standing to serve as Lead Plaintiffs. That argument misstates the facts and the law. The certification signed by Roy Behren, the Chief Compliance Officer for the Westchester Movants, confirmed that Westchester Capital[1] and G&S have full discretion and

---

[1]  SMW 80 acknowledges that Judge Buchwald appointed Westchester Capital as the lead plaintiff in *Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007). SMW 80 nevertheless suggests

3

control concerning investments made by the funds they advise. Mr. Behren's sworn statement also establishes that the Westchester Movants have complete authority to manage assets on behalf of their clients and to take legal action to pursue claims in connection with such assets, that they have complete investment authority over trades made in the funds they advise and that Roy Behren is an agent and attorney-in-fact with full power and authority to act in connection with investments made by the funds. Mr. Behren's sworn statement is uncontroverted.

It is well established that, where an investment adviser has full and complete discretion and authority to manage the securities of its clients, including the authority to purchase and sell, the investment advisor is deemed to have actually purchased the shares for the purposes of standing under *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). *See Alfaro v. Caprock Common. Corp.*, Civil Action No. 3:00-CV-1613-R, 2000 U.S. Dist. LEXIS 21743, at *7-8 (Dec. 8, 2000 N.D. Tex.) ("the rule in Blue Chip Stamps is not meant to exclude institutional investors and money managers, but rather should be interpreted broadly to include them as they are often the parties who make the investment decisions."). *See also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) ("However, when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name."); *Olsen v. New York Comty. Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005) (finding based on proffer that lead plaintiff movant has complete

---

that because Westchester Capital, acting to fulfill its fiduciary duties in that case, named an additional plaintiff in the amended complaint, it is somehow inadequate to lead this litigation. As this Court noted in *In Re Smith Barney Transfer Agent Litigation*, 2006 U.S. Dist. LEXIS 19728 at *12, it is entirely appropriate for the lead plaintiff to include additional named plaintiffs in the amended complaint, if necessary to protect members of the class.

4

authority to manage assets on behalf of clients and take legal action arising from management of such assets).

Similarly, the majority of courts that have ruled on this issue have held that the fact that a proposed lead plaintiff purchased securities on behalf of clients does not prevent it from being appointed lead plaintiff. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1136 n.18 (C.D. Cal. 1999) (noting that because "the Congressional preference was for large, institutional investors" to act as lead plaintiff, the proposed lead plaintiff's status as an investment advisor with losses incurred on behalf of its investment clients did not "detract from [the investment advisor's] suitability as a lead plaintiff"); *Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441-43 (W.D. Pa. 2001) ("we conclude that [proposed lead plaintiff] is not barred from serving as lead plaintiff by virtue of the fact that it is an investment advisor.") *See also, Casden v. HPL Techs., Inc.*, No. C-02-3510 VRW, 2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003).

The certification of Roy Behren submitted with the initial motion by the Westchester Movants is incontrovertible evidence of Westchester Capital's and G&S's unrestricted decision making authority and full discretion to bring this suit to recover the losses suffered by the funds that they manage. Mr. Behren's certification stated that Westchester Capital and G&S have full discretion and control over the investments of the funds and therefore are authorized to undertake all acts to recover losses suffered by those funds, including commencing legal action and seeking to be appointed as the lead plaintiff. This certification is sufficient to establish the presumption that Westchester Capital and G&S have the authority and standing to sue and are therefore the

most adequate lead plaintiffs to lead this litigation. *See, e.g., Weinberg*, 216 F.R.D. at 255; *Ezra*, 136 F. Supp. 2d at 441; *Olson*, 233 F.R.D. at 107.[2]

None of the cases cited by SMW 80 stands for the proposition that the mere status as an investment advisor prevents lead plaintiff appointment. In *In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002), the court noted, "[t]he fact that BPI [an investment advisor] is an institutional investor does not itself preclude it from being a lead plaintiff." *Smith v. Suprema Specialties, Inc.* 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002), also relied upon by SMW 80, actually supports the Westchester Movants' position. In that case, Judge Walls intentionally focused on the "proper authorization issue" in the context of an investment advisor seeking appointment as lead plaintiff, noting that "where a court appoints an asset manager as lead plaintiff, the plaintiff should provide evidence that it 'acts as attorney-in-fact for its clients and is authorized to bring suit to recover, for among other things, investment losses.'" *Id.* at 634. Significantly, three months later, Judge Walls, in *Roth v. Knight Trading Group., Inc.*, 228 F. Supp. 2d 524, 529 (D.N.J. 2002), wrote another opinion in which he appointed an investment advisor as lead plaintiff. In *Roth*, Judge Walls specifically distinguished his opinion in *Smith*:

> PAM is an investment advisor who seeks to be named Lead Plaintiff.... However, PAM has demonstrated to the Court's satisfaction that it has complete investment authority over its trades, and is agent and attorney-in-fact with full power and authority to act in connections with its investments. Because of PAM has 'unrestricted decision making authority, PAM's status as an investment advisor does not prevent it from serving as lead plaintiff.

*Id.* at 529-30.

---

[2] As stated above and in their opening brief, the losses suffered by the Westchester Movants were suffered in the funds they manage. The funds managed by the Westchester Movants purchased SLM stock. Therefore there is absolutely no validity to SMW 80's speculation that the Westchester Movants and their clients, who invested in managed funds, not SLM securities, might "double dip" in any recovery in this case.

6

Similarly, the other cases cited by SMW 80 do not establish a *per se* rule that investment advisors cannot be lead plaintiffs, but rather, in each of those cases, the proposed lead plaintiff fell short for reasons that are not at issue here. *In re eSPEED, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005) (rejecting lead plaintiff for failure to establish decision making authority and right to recover); *In re Bank One S'holders Class Action*, 96 F. Supp. 2d 780 (N.D. Ill. 2000) (rejecting lead plaintiff that engaged in extensive day trading and shorted Bank One stock).

Mr. Behren's sworn certification is the best evidence of the rights of the Westchester Movants vis-à-vis the related funds that they manage. In the face of Mr. Behren's sworn certification SMW 80 must prove that, in essence, Mr. Behren is somehow mistaken and that the Westchester Movants do not have standing. They have not done so, and the speculation they offer the Court in lieu of actual proof is insufficient, under the clear language of the PSLRA, to rebut the presumption that the Westchester Movants should be appointed Lead Plaintiffs.

### 2.   Statements By The Westchester Movants Do Not Rebut The Presumption

SLM Venture argues that because a fund managed by G&S (the "Merger Fund") communicated with its clients regarding the fund's losses in SLM, the Westchester Movants cannot adequately represent the interests of the Class. SLM Venture Resp. at 4. SLM Venture's speculation as to how Defendants might attempt to use those statements at some future point during the litigation is insufficient to rebut the presumption that the Westchester Movants should be appointed Lead Plaintiff. Further, at this stage of the litigation, SLM Venture is asking this Court to do an in depth analysis of every statement and every claim that may ultimately be alleged in an amended complaint. Such an analysis is not required in the context of lead plaintiff motions. As this Court determined, in *In Re Smith Barney Transfer Agent Litigation*, approving language used by other courts that came to the same conclusion:

7

> "Nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case." *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003); *see also In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (stating that "lead plaintiffs, appointed pursuant to the PSLRA, need not satisfy all elements of standing with respect to the entire lawsuit"); *In re Leapfrog Enters. Secs. Litig.*, 2005 U.S. Dist. LEXIS 40994, No. 03 Civ. 5421 (RMW), 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005) ("Lead plaintiffs need[] only to prove that they suffered *a* concrete injury because of defendants" wrongdoing, not *every* injury alleged by the class."). "Any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff-- namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 83 n.13 (2d Cir. 2004); *see also Weinberg*, 216 F.R.D. at 254 (Designating multiple Lead Plaintiffs to represent each cause of action would fracture the litigation and obstruct any efficient and controlled process. (internal quotations omitted)).

*Id.* at *10-12.

SLM Venture twists the Merger Fund's statements to argue that the Westchester Movants do not have standing to pursue the "claims that Sallie Mae and its CEO Albert Lord falsely represented that they had an enforceable agreement with the Flowers group." SLM Venture Resp. at 4. Indeed, the summary of the allegations in this case provided in SLM Venture's own response brief makes clear that the conduct by Lord criticized in the letter to the Merger Fund's investors is not currently at issue in this litigation. Specifically, in its description of the Burch complaint, SLM Venture states that the "theory" of the case is that "defendants made false statements about Sallie Mae's business and prospects" and summarizes the Burch complaint as follows:

> Defendants are alleged to have: materially misstated Sallie Mae's financial results by inadequately reserving for losses associated with loans made to subprime borrowers in non traditional schools; materially misrepresented Sallie Mae's business and prospects by failing to disclose the extent of its anticipated losses resulting from defaults in its non traditional loan portfolio and materially misstated Sallie Mae's earnings projections by failing to accurately account for legislative changes that

8

reduced the subsidies that it received from the federal government, increase lender risks, and required Sallie Mae to tighten its lending standards.

SLM Venture Resp. at 2, 4.

Focusing only on potential arguments that Defendants may later raise regarding SLM statements about the validity of the Flowers agreement, SLM Venture asserts that the Westchester Movants will be subjected to challenge "*if* they attempt to now plead claims inconsistent with their prior statements to their clients...." (emphasis added). SLM Venture Resp. at 7. This argument constitutes mere speculation as to the possible future challenges to the Westchester Movants and does not, therefore, provide the requisite proof required by the PSLRA to rebut the presumption that the Westchester Movants should be appointed Lead Plaintiffs.

Moreover, even if there were any validity to SLM Venture's suggestion that the Merger Fund's statements relate to a claim asserted in this case, it would be premature to address this issue on the current motions. *See Yates v. Open Joint Stock Co. "Vimpel-Commcations"*, No. 04 Civ. 9742 (NRB), 2005 U.S. Dist. LEXIS 7717, at *6-7 (S.D.N.Y. Apr. 29, 2005) ("Defendants' arguments [that the lead plaintiff applicant [lacked standing] are properly addressed at the class certification stage, not in the context of a motion to appoint lead counsel.").[3]

The cases cited by SLM Venture involving motions for class certification are distinguishable precisely because, in those cases, the courts were presented with actual proof of inadequacy. *Savino v. Computer Credit Inc.*, 164 F. 3d 81 (2d Cir. 1998) (class certification was denied because the representative "repeatedly" misrepresented his position as to whether he

---

[3] The Westchester Movants are actively involved in two other shareholder class action suits, *Kaplan v. Gelfond* (described hereinabove) in which Westchester Capital is Lead Plaintiff and an action in the Southern District of California involving Leap Wireless (lead plaintiff motion pending). There is absolutely no basis for claiming, as SLM Venture does (SLM Venture Resp. at 7), that the Westchester Movants are serving at the direction of counsel.

9

received a letter from defendants which formed the very basis of the lawsuit.); *Kline v. Wolf*, 702 F. 2d 400 (2d Cir. 1983) (class certification was denied because one representative testified that he relied upon a report that did not exist at the time he allegedly relied upon it and the other representative refused to answer proper discovery questions.); *Darvin v. International Harvester Co.*, 610 F. Supp 255 (S.D.N.Y. 1985) (inconsistent testimony and the failure to fully comply with reasonable discovery requests by refusing to answer relevant questions); *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383 (N.D. Ill. 2006) (attorney-in-fact convicted of willfully filing false income tax returns).

Finally, SLM Venture requests that the Court appoint them as an additional lead plaintiff together with the Westchester Movants. SLM Venture Resp. at 9. As discussed above, there is no need for the appointment of co-lead plaintiffs because the Westchester Movants are fully capable of prosecuting this Action. Many courts, including this Court, have been reluctant to appoint multiple lead plaintiffs. *In Re Smith Barney Transfer Agent Litigation*, 2006 U.S. Dist. LEXIS 19728 at *13 ("Designating multiple Lead Plaintiffs to represent each cause of action would fracture the litigation and obstruct any efficient and controlled process."). Even assuming, arguendo, that the Westchester Movants' statements impact their ability to litigate claims relating to the proposed acquisition of SLM by Flowers, such limitation does not preclude their appointment as Lead Plaintiffs. The Westchester Movants as Lead Plaintiffs can, if necessary, name additional class representatives in the amended complaint to address those claims. *Id.*

## CONCLUSION

For the reasons set forth in its opening motion, brief in further support and herein, the Westchester Movants respectfully request that the Court: (i) appoint Westchester Capital and

G&S as Lead Plaintiffs; and (ii) approve their choice of Abbey Spanier Rodd & Abrams, LLP to serve as Lead Counsel.

Dated: April 28, 2008

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: /s/ Nancy Kaboolian
Arthur N. Abbey
Stephen T. Rodd
Nancy Kaboolian (NK 6346)
212 East 39th Street
New York, New York 10016
Tel:   (212) 889-3700
Fax:   (212) 684-5191

Counsel for the Westchester Movants and Proposed Lead Counsel for the Class

Additional Plaintiffs' Counsel

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gerald H. Silk
1285 Avenue of the Americas
New York, New York 10019
jerry@blbglaw.com
Tel: (212) 554-1400
Fax: (212) 554-1444

11

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
                             )  ss.:
COUNTY OF NEW YORK           )

I, Carolyn Davila, being duly sworn, deposes and says:

1.  I am not a party to the action, over the age of 18 years, and am a legal secretary with the firm of Abbey Spanier Rodd & Abrams, LLP, 212 East 39th Street, New York, New York 10016, attorneys for plaintiffs.

2.  On April 28, 2008, I Caused A Copy Of The Accompanying:

Reply Memorandum of Westchester Capital Management, Inc. and Green & Smith Investment Management L.L.C. In Support of Their Motion for Appointment as Lead Plaintiffs

Affidavit Of Service

to be served upon the following persons/entities listed on the attached service list by U.S. mail and the ECF filing rules.

Carolyn Davila

Sworn to before me this
28th day of April 2008

Notary Public

SUSAN LEE
Notary Public, State of New York
No. 01LE6074695
Qualified in Queens County
Commission Expires May 20, 20 10

## SERVICE LIST

**Counsel for Plaintiffs**

Alfred G. Yates, Jr.
LAW OFFICES OF ALFRED G. YATES, JR., P.C.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 391-5164
Fax: (4120 471=-1033

Corey D. Holzer
HOLZER HOLZER & CANNON LLC
1117 Perimeter Center West
E-107
Atlanta, GA 30338
(770) 392-0090
Fax: 770 392 0029

Darren J. Robins
David C. Walton
COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301
619-231-1058
Fax: 619 231 7423

Samuel Howard Rudman
COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, LLP
58 South Service Road
Suite 200
Melville, NY 11747
631-367-7100
Fax: 631-367-1173
Email: srudman@csgrr.com

Jonathan K. Levine
Daniel C. Girard
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
415-981-4500
Fax. 415-981-4846

**Counsel for Defendants**

Laurie B. Smilan
Abid R Qureshi
LATHAM & WATKINS, LLP
Two Freedom Square, Suite 500
11955 Freedom Drive,
Reston, Virginia 20190-5651
Tel: (703) 454-1000
Fax: (703) 456-1001


Peter A. Wald
LATHAM & WATKINS, LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel (415) 391-0600
Fax: (415) 395-8095


Jeffrey G. Hammel
LATHAM & WATKINS, LLP
885 Third Avenue
New York, New York 10022-4834
Tel:  (212) 906-1200
Fax:  (212) 751-4864