**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ROBERT H. BURCH, Individually and on Behalf of All Others Similarly Situated, | :<br>:<br>: |
| Plaintiff, | : Case No. 1:08-CV-01029-WHP |
| vs. | : |
| SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR, | :<br>:<br>: |
| Defendants. | : |
| RUSSELL PATRICK, Individually and on Behalf of All Others Similarly Situated, | :<br>:<br>: |
| Plaintiff, | : Case No. 1:08-CV-02463-WHP |
| vs. | : |
| SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR, | :<br>:<br>: |
| Defendants. | : |

**REPLY OF SLM VENTURE ON CROSS-MOTIONS FOR CONSOLIDATION,**
**APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF LEAD COUNSEL**

**INTRODUCTION**

The Court should appoint SLM Venture as Lead Plaintiff, as it is the only applicant that satisfies the qualifications for appointment under the PSLRA. Although the Westchester Movants have sustained the greatest financial loss, they are subject to unique defenses that render them incapable of adequately representing the class. The evidence before the Court shows that the Westchester Movants informed their own investors that their losses were the result of poor business decisions by Sallie Mae's executives and their own failed trading strategies, not fraud. Having taken a position that cannot be reconciled with the theory of this case, the Westchester Movants cannot serve as sole Lead Plaintiff without prejudicing the class.

SLM Venture is therefore presumed to be the "most adequate plaintiff" under the PSLRA, as it has the second largest financial interest and has already demonstrated its typicality and adequacy to represent the class. The Westchester Movants do not dispute SLM Venture's showing of its losses, typicality or adequacy. SMW 80 speculates about SLM Venture's application, but fails to submit *any* evidence, as the PSLRA requires, that would sustain a challenge to the presumption that SLM Venture is the most adequate plaintiff. Having suffered a mere fraction of the losses sustained by SLM Venture, SMW 80's only hope of being appointed as Lead Plaintiff rests on scattershot attacks which the Court should reject.

Although SLM Venture respectfully submits that its initial showing in support of its Lead Plaintiff application is sufficient, the Court has discretion to inquire further into SLM Venture's typicality or adequacy in order to protect the interests of the class. To facilitate such inquiry, SLM Venture submits a further declaration of Sam Sotoodeh, an investor, investment advisor and authorized agent for SLM Venture who signed the certification on its behalf.

**ARGUMENT**

**I.  SLM VENTURE HAS SUBMITTED PROOF THAT THE WESTCHESTER MOVANTS ARE NOT THE "MOST ADEQUATE PLAINTIFF."**

As described in SLM Venture's response to the cross-motions for consolidation, while the Westchester Movants have the largest financial interest, the presumption that they are the

1

"most adequate plaintiff" under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), is rebutted here in light of evidence showing that the Westchester Movants already disclaimed any contention that their losses are attributable to actionable misconduct by defendants.  *See* Docket No. 31, at 4-7.  In a January 15, 2008 letter to shareholders the Westchester Movants attributed their losses to poor business judgment by Sallie Mae's CEO and their own failed trading strategies, rather than fraudulent conduct.  *See* Docket No. 29, Ex. B.  The Westchester Movants' characterization of the facts giving rise to their losses is inconsistent with the allegations in *Burch v. SLM Corp.*, Case No. 1:08-cv-01029-WHP (and any other complaint they could file in this matter) that defendants knowingly or recklessly made false statements about Sallie Mae's business and prospects and failed to disclose adverse material facts about Sallie Mae.  *See* Docket No. 1, at ¶¶ 3, 12-13, 21.

The impairment of a class representative's credibility as a result of prior inconsistent statements has due process connotations.[1]  Defendants can be expected to raise the inconsistencies in Westchester Movants' prior statements and their complaint to challenge their credibility and create individualized defenses that will undermine their adequacy of representation throughout the case.  *See, e.g., Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568 (C.D. Cal. 2007) (Discrepancies between plaintiffs' declarations and depositions "raise significant questions about the competence, if not the integrity, of the Plaintiffs and their counsel. These discrepancies might well cause a fact finder to focus on [Plaintiffs'] credibility to the detriment of the absent class members' claims.") (quotation omitted); *Robinson v. Gillespie*,

---

[1]   An examination of a witness concerning a prior inconsistent statement is one of the most effective forms of impeachment.  *See United States v. Smith*, 987 F.2d 888, 892 (2d Cir. 1993) (noting that witness's "credibility was seriously undermined by his prior inconsistent statements"); *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1311-1312 (8th Cir. 1993) (A prior inconsistent statement "is not admitted for its truth, but rather for the limited purpose of impeaching the witness.  Such a statement … only serves to raise doubts regarding the truthfulness of both statements of the witness.") (citation omitted); *United States v. Hibler*, 463 F.2d 455, 462 (9th Cir. Cal. 1972) ("One of the most effective means of attacking that [witness's] credibility was to impeach him with prior inconsistent statements on key elements of his testimony.").

219 F.R.D. 179, 186 (D. Kan. 2003) ("Plaintiffs may be found to be inadequate representatives … where they lack credibility concerning their liability claims….").

Anticipating an attack on their credibility arising out of variations in their characterization of defendants' conduct, the Westchester Movants may be tempted to plead a narrower complaint. For example, the Westchester Movants may be wary of making critical scienter allegations—*e.g.*, that defendants made material misrepresentations about Sallie Mae's business and prospects in order to consummate a merger with the Flowers group, from which they stood to gain more than $255 million in cash—because such allegations of deliberate fraud are inconsistent with the Westchester Movants' prior assertion of corporate mismanagement and their own mistakes. These allegations are of critical importance to SLM Venture and other similarly situated investors, and they will be prejudiced if their class representative is tempted to soft peddle them in an effort to avoid contradicting its prior statements.

Defendants also can be expected to use the prior inconsistent statements to raise individualized defenses to the Westchester Movants on class certification, at summary judgment and during trial. A finding of inadequacy at an advanced stage in the litigation will create unnecessary delays and complications, requiring additional representation or perhaps subclasses to protect the interests of the class, and create an incongruous situation in which the Lead Plaintiff is not qualified to serve as a class representative. Moreover, any settlement of the case would be subject to attack, as class members could well argue that the Westchester Movants settled the case to avoid having to address a damaging prior inconsistency that threatens to undermine their credibility and adequacy. Notably, a settlement cannot be approved where the plaintiff is inadequate to represent the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 17-18 (2d Cir. 1981) (reversing class settlement where named plaintiffs were atypical and inadequate to represent the class).

These problems are easily avoided. Where, as here, there are obvious defenses to class certification, the most appropriate way to protect the interests of the class is to appoint a Lead

Plaintiff who does not suffer from these individualized defenses. *See In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003) (finding plaintiff to be inadequate class representative where his "own conflicting testimony reveals an antagonistic interest to the class as a whole … which would adversely impact the interests of the proposed class"); *In re Bally Total Fitness Secs. Litig.*, No 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) (declining to appoint presumptive lead plaintiff applicant as the time and attention it would be required to devote to litigating a unique defense "would distract it from the claims of the rest of the class"). SLM Venture is not subject to unique defenses, and it has suffered more than sufficient losses to align its interests with those of the class. Having demonstrated that it is typical and adequate to represent the class, SLM Venture is entitled to the presumption that it is the most adequate plaintiff and should be appointed as Lead Plaintiff.[2]

## II.     **HAVING REBUTTED THE § 78u-4(a)(3)(B) PRESUMPTION AS TO THE WESTCHESTER MOVANTS, SLM VENTURE IS THE MOST ADEQUATE PLAINTIFF.**

Because Westchester Movants are unable adequately to represent the class, the benefit of the § 78u-4(a)(3)(B) presumption shifts to SLM Venture in that it has the second largest financial interest and meets the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If . . . the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy . . . [t]he court should then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements . . . .").

---

[2] SMW 80 raises additional concerns about the Westchester Movants' standing which further demonstrate that the Westchester Movants are unable to adequately represent the interests of the class on their own. *See* Docket No. 31 at 5-6. At a minimum, SLM Venture should be appointed Lead Plaintiff along with the Westchester Movants. *See Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006) (appointing multiple applicants as co-lead plaintiffs and their respective counsel as co-lead counsel, where individual applicants may be subject to "unique defenses"). Simply adding SLM Venture or others as class representatives at the certification stage is insufficient to compensate for the appointment of a Lead Plaintiff who is inadequate to represent the class.

4

Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 2004 U.S. Dist. LEXIS 9571, at *54 (S.D.N.Y. May 27, 2004) (Sweet, J.); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). The Rule 23(a) standard for adequacy of representation is met by the absence of potential conflicts and the choice of qualified and experienced counsel. *See Babcock*, 212 F.R.D. at 131.

Here, SLM Venture already has demonstrated in its opening brief that it satisfies the typicality requirement under Rule 23, as its claims against defendants arise from the same series of events and are based on the same legal theories as the claims of all other class members. *See* Docket No. 17, at 7-8. SLM Venture (1) purchased Sallie Mae common stock during the Class Period; (2) purchased Sallie Mae common stock at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. *Id.*

SLM Venture has also shown that it is adequate to represent the class in that it has no interests antagonistic to class members and has retained competent and experienced counsel to prosecute this class action. *See id.*, at 8. No other applicant has submitted evidence to contradict SLM Venture's showing of typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (The presumption under the PSLRA "may be rebutted ***only upon proof*** by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.") (emphasis added). Thus, SLM Venture should be appointed Lead Plaintiff.

**III.   SMW 80 FAILED TO SHOW THAT SLM VENTURE IS INCAPABLE OF ADEQUATELY REPRESENTING THE CLASS.**

SMW 80's argument that SLM Venture has not provided sufficient information to establish its adequacy as Lead Plaintiff is unsupported and without merit. "An investor who

5

seeks to be appointed as lead plaintiff only needs to make a ***preliminary showing*** that it satisfies the requirements of Fed. R. Civ. P. 23." *Yates v. Open Joint Stock Co. "Vimpel-Comms."*, No. 04 Civ. 9742 (NRB), 04 Civ. 9973 (NRB), 2005 U.S. Dist. LEXIS 7717 (S.D.N.Y. Apr. 29, 2005) (citing *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)). *See also In re Advanced Tissue Scis. Secs. Litig. v. Advanced Tissue Scis., Inc.*, 184 F.R.D. 346, 349 (S.D. Cal. 1998) (emphasis added); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997) ("[R]equiring evidentiary proof of the Rule 23 requirements at the Lead Plaintiff appointment stage (absent a showing of a reasonable basis by another plaintiff) would vitiate Congress' intent to provide for a speedy Lead Plaintiff determination."); *Bell v. Ascendant Solutions, Inc*., 2002 U.S. Dist. LEXIS 6850, *9 (N.D. Tex. Apr. 17, 2002).  As described above, SLM Venture has made the required preliminary showing in its papers filed to date.

While raising questions about SLM Venture's composition and investment activities, SMW 80 fails to meet its burden to rebut the presumption that SLM Venture is the "most adequate plaintiff" to represent the class.  Despite the requirements of the PSLRA, SMW 80 did not submit any proof whatsoever, let alone proof sufficient to challenge SLM Venture's typicality or adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  By requiring the submission of actual evidence to counter the "most adequate plaintiff" presumption, Congress sought to prevent an applicant with an insufficient financial interest from hijacking a position of leadership on the basis of unsupported speculation about a more qualified applicant. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.").  SMW 80's tactics should not be rewarded.

The Court also should reject SMW 80's request that it be permitted to conduct discovery regarding SLM Venture.  The PSLRA authorizes a plaintiff to conduct discovery into whether a class member is the most adequate plaintiff "only if the plaintiff first ***demonstrates a reasonable***

6

*basis* for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv) (emphasis added). SMW 80 fails to meet its burden under the PSLRA, as it did not submit any actual evidence that would provide the Court with a reasonable basis to find that SLM Venture is incapable of adequately representing the class. *See Knisley v. Network Assocs.*, 77 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999) ("Discovery is only warranted if a reasonable basis exists for a finding that the presumptively most adequate plaintiff is *incapable* of adequately representing the class.") (emphasis in original); *Fischler v. Amsouth Bancorporation*, 1997 U.S. Dist. LEXIS 2875, *4 (M.D. Fla. Feb. 6, 1997) ("Discovery may be had on the issue only upon a showing of a reasonable basis for a finding the presumptive most adequate plaintiff cannot adequately represent the class."). Again, SMW 80's unsupported speculation should not be rewarded. If discovery is allowed, however, all movants for Lead Plaintiff should be afforded access to it.

**IV.    SLM VENTURE'S SUBMISSIONS FURTHER DEMONSTRATE THAT IT IS THE MOST ADEQUATE PLAINTIFF.**

As described above and in prior papers, SLM Venture has already made a sufficient showing for its appointment as Lead Plaintiff. Nonetheless, to the extent that the Court seeks further information about SLM Venture to facilitate its decision on Lead Plaintiff applications, SLM Venture respectfully submits the accompanying declaration of Sam Sotoodeh which addresses the questions raised by SMW 80.

As stated in Mr. Sotoodeh's declaration, SLM Venture is a joint venture involving several families that have invested together with Mr. Sotoodeh's family in various real estate and securities transactions over the years. *See* Sotoodeh Decl., at ¶ 2.[3] SLM Venture was formed for the purpose of investing in SLM Corporation. *Id.* Mr. Sotoodeh is one of the principal investors in SLM Venture and is the investment professional who made investment recommendations and decisions for SLM Venture. *Id.*, at ¶ 3. In so doing, he reviewed and relied upon public

---

[3]    "Sotoodeh Decl." refers to the Declaration of Sam Sotoodeh in Further Support of the Motion of SLM Venture for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, submitted herewith.

7


statements by SLM Corporation and its executives in making these recommendations and decisions.  *Id*.  Mr. Sotoodeh has full authority to act on behalf of SLM Venture and its investors, including the authority to commence legal actions and the authority to seek to serve as lead plaintiff in an action brought pursuant to the federal securities laws.[4]  *Id*., at ¶ 4.  Finally, the certification by Mr. Sotoodeh filed in support of SLM Venture's motion lists all of SLM Venture's purchases and sales of SLM Corporation common stock at issue in this litigation.  *Id*.  Thus, the evidence before the Court shows that SLM Venture is adequate to represent the class.

## CONCLUSION

For the foregoing reasons and the reasons set forth in SLM Venture's prior briefing, the Court should consolidate the related actions, appoint SLM Venture as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) either alone or in conjunction with the Westchester Movants, and approve its selection of Girard Gibbs LLP as Lead Counsel.

DATED:  April 28, 2008						Respectfully submitted,

**GIRARD GIBBS LLP**

By:   *Jonathan K. Levine*
      Jonathan K. Levine (JL-8390)

Daniel C. Girard
Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4500
Facsimile:  (415) 981-4846

**Proposed Lead Counsel**

---

[4]  Mr. Sotoodeh has authority to bind all members of the joint venture in pursuing their legal rights against Sallie Mae and its executives.  *See, e.g., Ingalls Iron Works Co. v. Fehlhaber Corp.*, 327 F. Supp. 272, 284 (S.D.N.Y. 1971) (A joint venturer "could bind the venture if it acted within the scope of its authority to act for the Joint Venture.") (citing *Fluor Corp. v. United States ex rel. Mosher Steel Co.*, 405 F.2d 823, 827-828 (9th Cir.), *cert. denied*, 394 U.S. 1014 (1969); *Allen Chase and Company v. White, Weld & Co.*, 311 F. Supp. 1253, 1258 (S.D.N.Y. 1970).

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY 10004
Telephone: (212) 584-0757
Facsimile: (212) 584-0799

**Local Counsel**

9