UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ROBERT H. BURCH, Individually and on Behalf of All Others Similarly Situated, | : Civil Action No. 1:08-CV-01029-WHP |
| Plaintiff, | : <u>CLASS ACTION</u> |
| vs. | : |
| SLM CORPORATION, et al., | : |
| Defendants. | : |
| RUSSELL PATRICK, Individually and on Behalf of All Others Similarly Situated, | : Civil Action No. 1:08-cv-02463-WHP |
| Plaintiff, | : <u>CLASS ACTION</u> |
| vs. | : |
| SLM CORPORATION, et al., | : |
| Defendants. | : |

RESPONSE OF SHEET METAL WORKERS' LOCAL NO. 80
PENSION TRUST FUND TO THE DECLARATION OF ARTHUR N.
ABBEY IN RESPONSE TO THE JUNE 30, 2008 ORDER

Lead Plaintiff movant Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW 80") respectfully submits this response to the Declaration of Arthur N. Abbey in Response to the June 30, 2008 Order (the "Abbey Declaration" or "Abbey Decl."), filed July 8, 2008.

## I. PRELIMINARY STATEMENT

By Order dated June 30, 2008 (the "Order"), the Court directed Westchester Capital Management, Inc. ("Westchester Capital") and Green & Smith Investment Management L.L.C. ("Green & Smith") (collectively, the "Westchester Movants") to submit "any further evidence that they have unrestricted decision-making authority over all five funds[1] that purchased shares of SLM and authority to maintain this action on behalf of all those funds." Order at *2.

In response, the Westchester Movants filed the Abbey Declaration, which includes eight exhibits labeled A through H, that purport to demonstrate the funds' "unrestricted decision-making authority" and "authority to maintain this action." As detailed below, these exhibits fail to make the requested showing. For example, several of the exhibits (Abbey Decl. Exs. A, C, G) make clear that the scope of the Westchester Movants' authority is actually somewhat limited and, contrary to the Westchester Movants' earlier representations, does not specifically authorize the Westchester Movants to seek appointment as Lead Plaintiff on behalf of those funds. Also, a number of the exhibits describing the Westchester Movants' authority (Abbey Decl. Exs. C, D, G, H) were signed by other investment advisors (similar to the Westchester Movants) and not by the ultimate beneficiaries of the respective funds, *i.e.*, the clients. Like the Westchester Movants' earlier filings

---

[1] The five funds on whose behalf the Westchester Movants filed their motion for Lead Plaintiff are: The Merger Fund, The Merger Fund VL, GS Master Trust, MSS Merger Arbitrage 2 and the Institutional Benchmarks Series (Master Feeder) Limited.

in this case, the representations made by these investment advisors are unsupported by any authority that they are authorized to make these representations.

Importantly, none of the exhibits contain actual copies of the advisory agreements that are supposedly the documents that provide the Westchester Movants with their claimed authority. Instead, each of the exhibits contains a summary characterization of the Westchester Movants' authority, which is really not much more than what was stated by Mr. Behren in the certification that he signed on behalf of the Westchester Movants on March 28, 2008, and which has already proven to be inaccurate. Needless to say, the problem with a summary characterization of a document is that, while the document actually says one thing, it can be misinterpreted to mean another. In a situation like this, where Mr. Behren has already misinterpreted the scope of the Westchester Movants' authority, the importance of looking at the actual documents cannot be overstated.

The Abbey Declaration also raises other concerns about appointing the Westchester Movants as Lead Plaintiff. A cursory look at the exhibits makes it clear just how complex the Westchester Movants are: MSS Merger Arbitrage 2 is somehow tied in to MSS Capital Limited, based in London, which is the sub-investment manager of The FTSEhx Fund SPC, which states that it is acting solely in respect of MSS Merger Arbitrage 2 for the purposes of this submission. Yet its investment agreement with Green & Smith also includes MSS Fund Management Limited, MSS Capital Limited, as well as MSS Merger Arbitrage 2. GS Master Trust, a Bermuda Trust, appears to have a trustee by the name of Winchester Global Trust Company Limited, with no indication of where the trustee is based, but sounding as if it is based in the United Kingdom. The Merger Fund is a Massachusetts business trust, while The Merger Fund VL is a Delaware statutory trust. Crédit Agricole Structured Asset Management Advisors LLC ("Crédit Agricole") claims to be an investment manager to Institutional Benchmarks Series (Master Feeder) Limited, and describes itself

as a successor to Starview Capital Management LLC, but it is only acting here "solely in respect of the Cursa Series."

The complicated structure of these funds makes it very difficult to discern who the real beneficiaries are, raising further questions about the Westchester Movants' adequacy and typicality to represent the Class. *See, e.g.*, *Smajlaj v. Brocade Commc'ns Sys., Inc.*, No. C 05-02042 CRB, slip op. at *5 (N.D. Cal. Jan. 12, 2006) (attached hereto as Exhibit A) ("In sum, there are too many questions surrounding Intrepid's standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole."). There is also a very real concern that these unidentified beneficiaries may have additional undisclosed trades in shares of SLM, which will cause their claimed financial interest to be reduced.

For these reasons, it is respectfully submitted that the Westchester Movants have ***not*** made the requisite showing requested by the Court with respect to their authority to bring this suit, they have not provided any information to rebut the argument that they are arbitrageurs who were merely speculating on the price of SLM stock and are therefore atypical investors,[2] and they have not made any representation that they invested any of their own money, as opposed to the money of their clients, in SLM. Accordingly, it is respectfully submitted that their motion should be denied and that the motion of SMW 80 be granted.

---

[2]     *See, e.g., Camden Asset Mgmt. v. Sunbeam Corp.*, No. 99-8275, 2001 U.S. Dist. LEXIS 11022, at *46-*47 (S.D. Fla. July 3, 2001) (denying class certification to investor who "employed a hedge or convertible arbitrage strategy"). This concern, among others, was also raised with respect to the motion of SLM Venture, another competing movant, and was not responded to by counsel for the Westchester Movants or SLM Venture at the oral argument on the motions for Lead Plaintiff on May 16, 2008.

## II. ARGUMENT

### A. The Abbey Declaration Does Not Evidence the Authority of the Westchester Movants to Seek Appointment as Lead Plaintiff

Although the Order had directed the Westchester Movants to submit evidence of their "unrestricted decision-making authority" and "authority to maintain this action," they have failed to do so. Instead, they have submitted evidence that demonstrates a strong basis for denying their motion for Lead Plaintiff.

For example, Exhibit A of the Abbey Declaration appears to be a consent action of the Board of Trustees of The Merger Fund and The Merger Fund VL. In the second "Whereas" clause of Exhibit A, it states that:

> the Board *believes* that Westchester Capital Management, Inc. (the "Adviser") has discretion and authority under each of the (i) the Investment Advisory Contract, dated January 31, 1999, by and between [The Merger Fund] and the Adviser and (ii) the Investment Advisory Agreement, dated as of July 1, 2003, by and between [The Merger Fund] VL and the Adviser, respectively (the "Advisory Agreements") to commence Lawsuits on behalf of [The Merger Fund and The Merger Fund VL] and/or participate as lead plaintiff or otherwise in Lawsuits for the benefit of [The Merger Fund and The Merger Fund VL].

Abbey Decl., Ex. A (emphasis added).

The Merger Fund and The Merger Fund VL, however, have not produced copies of the Investment Advisory Contract, dated January 31, 1999, or the Investment Advisory Agreement, dated as of July 1, 2003, so that the Court and any "member of the purported plaintiff class," 15 U.S.C. 78u-4(a)(3)(B)(iii)(II), can make a determination as to what the Westchester Movants' true authority actually is and not simply what the Board of Trustees "believe" the Westchester Movants' authority to be. Indeed, this "belief" of the Board of Trustees, with no supporting documentation, is reiterated in the fourth "Whereas" clause of the same document, in which the Board of Trustees states that it desires to "confirm its longstanding *belief* that the Advisor has standing and authority under the Advisory Agreements to commence and pursue lawsuits on behalf of [The Merger Fund

and The Merger Fund VL]." (emphasis added). Such a "belief" is simply insufficient as "evidence" of the Westchester Movants' "authority to maintain this action."[3]

Moreover, there is nothing in the record to demonstrate that the Board of Trustees that signed this Consent Action is authorized under the Investment Advisory Contract or the Investment Advisory Contract Agreement to retroactively, or on a going-forward basis, authorize the filing of lawsuits on behalf of The Merger Fund and The Merger Fund VL without the express permission of clients of those funds, *i.e.*, the people who have invested their money in The Merger Fund and The Merger Fund VL. In any event, what is clear from the Board of Trustees' ratification and confirmation of the actions taken by Mr. Behren with respect to this lawsuit is that the Westchester Movants did not have the specific authority to seek appointment as Lead Plaintiff in this case at the time that it filed its motion.[4] *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005) ("Moreover, the advisor must be attorney-in-fact for his clients, and he must be granted both unrestricted decision-making authority ***and the specific right to recover on behalf of his clients***")(emphasis added).[5]

---

[3] The other exhibits attached to the Abbey Declaration also reference the various advisory agreements for the different funds. Surprisingly, copies of those agreements were also never produced.

[4] Since the investment agreements do not contain any explicit authority for the Westchester Movants to seek appointment as Lead Plaintiff, the Board of Trustees' May 28, 2008 agreement to allow such a filing – assuming, *arguendo*, that the Board of Trustees is empowered to even authorize such action – is untimely since motions for Lead Plaintiff were filed on March 31, 2008 and the Westchester Movants did not have this authority at the time of the filing of the Lead Plaintiff motion.

[5] There has still been no representation that the Westchester Movants have invested any of their own money in SLM, leaving them with a very limited, if any, financial interest in the outcome of this action. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357 (S.D.N.Y. 2002) (stating that "in most cases in which institutional investors were named lead plaintiffs, the institution invested its own assets" and limiting the investment advisor's financial interest to the .35% fee it earned on the assets it invested); *see also Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp.

The other documents submitted by the Westchester Movants are similarly unavailing. Exhibits B, D, F and H of the Abbey Declaration all appear to be statements, without any documentary support, that the Westchester Movants[6] have "full power and authority to manage and supervise" their funds. While these statements appear to be identical in that they all provide authority with respect to the "investments made by" the Westchester Movants, there is an important distinction to be made between them. Specifically, Exhibits B, D and F purport to provide broad authority to the Westchester Movants with respect to the "business" of the funds, while Exhibit H, which relates to Institutional Benchmarks Series (Master Feeder) Limited, clearly limits the authority of the Westchester Movants to "the trading activities" of the fund, which would generally not include the initiation of lawsuits on behalf of the fund. Moreover, the other document submitted on behalf of Institutional Benchmarks Series (Master Feeder) Limited is an undated letter from Dither Cents, Chief Operating Officer of Crédit Agricole, that references an Investment Management Agreement, dated as of May 30, 2006, pursuant to which Green & Smith is purportedly authorized to seek appointment as Lead Plaintiff "for the benefit of the Fund." *See* Abbey Decl., Ex. G. There is no indication, however, that Green & Smith is authorized to seek to be appointed Lead Plaintiff ***on behalf of*** – and not simply for the benefit of – the fund. Of greater concern is the fact that Crédit Agricole, on whose behalf Mr. Cents signed the letter, is itself an investment manager to the Institutional Benchmarks Series (Master Feeder) Limited and there has been no evidence or

---

2d 1129, 1136 n.18 (C.D. Cal. 1999) (appointing as lead plaintiff an investment advisor that "'invests on its own account,' so presumably some portion of its loss was incurred in a personal rather than a representative capacity").

[6] Although the exhibits to the Abbey Declaration each only specify one of the Westchester Movants at a time, *i.e.*, Westchester Capital or Green & Smith, the distinction is without a difference for the purposes of this response and therefore no distinction is made here.

representation whatsoever that it has any authority to make any representations on behalf of Institutional Benchmarks Series (Master Feeder) Limited.

This problem also extends to the submission made on behalf of MSS Merger Arbitrage 2. That letter, referenced as Exhibit C, was submitted by the Chief Operating Officer of MSS Capital Limited, which describes itself as a "sub-investment manager of The FTSEhx Fund SPC, acting solely in respect of MSS Merger Arbitrage 2." While the letter purports to represent that Green & Smith has authority to pursue lawsuits for "the benefit of the Fund," there is no indication that Green & Smith is authorized to seek appointment as Lead Plaintiff *on behalf of* – and not simply "for the benefit of" – the fund. Moreover, the fact that this letter was signed by a "sub-investment manager" of some type of other fund that is seeking to act "solely in respect of MSS Merger Arbitrage 2" raises further questions about the authority of that "sub-investment manager" to act on behalf of MSS Merger Arbitrage 2 and make representations on its behalf.

Lastly, the GS Master Trust, which describes itself as "a Bermuda trust," references a Declaration of Trust, dated as of May 31, 2005, that purports to provide Green & Smith with authority to seek appointment as Lead Plaintiff on its behalf. No copy of that Declaration of Trust has been provided to evidence that Green & Smith has the broad powers that it purports to have.

Accordingly, the Westchester Movants have not made a sufficient showing of their "unrestricted decision-making authority" and "authority to maintain this action."

### B.     The Abbey Declaration Evidences the Complex Structure of the Westchester Movants

The complicated structure of how the five funds of the Westchester Movants are created, managed and traded further evidences why the motion of the Westchester Movants should be denied. In *Smajlaj*, the court, following limited discovery of Intrepid Capital Management, a similar type of investor that had filed a motion to be lead plaintiff, stated that:

- 7 -

> The Court has struggled, despite several rounds of briefing and two oral arguments, to determine the precise corporate structure of Intrepid Capital Management, which of its hedge funds actually held stock in corporate defendant, who manages which hedge funds, and who, if anyone, has authority and permission from limited partners to proceed with this litigation.

Slip op. at *4. In reaching its conclusion that Intrepid Capital Management's presumption had been sufficiently rebutted, the court further stated:

> In sum, there are too many questions surrounding Intrepid's standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole.

*Id.* at *5.

These same questions and concerns apply with equal force to the Westchester Movants, who have had numerous rounds of briefing and oral argument to try to explain their structure, authority and trading strategies. Accordingly, the motion of the Westchester Movants should be denied.

## III.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in its prior submissions, SMW 80 respectfully requests that the Court grant its motion in full and deny the competing motions.

DATED: July 10, 2008                     COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         MARIO ALBA JR.


                                            /s/ *David A. Rosenfeld*
                                         DAVID A. ROSENFELD

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         [Proposed] Lead Counsel for Plaintiff

- 8 -

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that, on July 10, 2008, I caused a true and correct copy of the attached:

> Response of Sheet Metal Workers' Local No. 80 Pension Trust Fund to the Declaration of Arthur N. Abbey in Response to the June 30, 2008 Order

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.

*/s/ David A. Rosenfeld*
David A. Rosenfeld

SALLIE MAE
Service List - 4/2/2008    (08-0020)
Page 1 of 2

**Counsel For Defendant(s)**

Laurie B. Smilan
Abid R. Qureshi
Latham & Watkins LLP
11955 Freedom Drive, Suite 500
Reston, VA  20191-5651
   703/456-1000
   703/456-1001 (Fax)

Peter A. Wald
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
   415/391-0600
   415/395-8095 (Fax)

Jeffrey G. Hammel
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4802
   212/906-1200
   212/751-4864 (Fax)

**Counsel For Plaintiff(s)**

Arthur N. Abbey
Nancy Kaboolian
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, NY  10016
   212/889-3700
   212/684-5191 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Gerald H. Silk
Bernstein Litowitz Berger & Grossmann LLP
1285 Ave of the Americas, 38th Fl.
New York, NY  10019
   212/554-1400
   212/554-1444 (Fax)

Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA  94108
   415/981-4800
   415/981-4846 (Fax)

SALLIE MAE

Service List - 4/2/2008    (08-0020)

Page 2 of 2

Corey D. Holzer
Michael I. Fistel, Jr.
Holzer Holzer & Fistel, LLC
1117 Perimeter Center West, Suite E-107
Atlanta, GA  30338
   770/392-0090
   770/392-0029 (Fax)

Alfred G. Yates, Jr.
Law Offices of Alfred G. Yates, Jr., P.C.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
   412/391-5164
   412/471-1033 (Fax)

Christopher A. Seeger
Stephen A. Weiss
David R. Buchanan
Seeger Weiss LLP
1 William Street
New York, NY  10004-2502
   212/584-7000
   212/584-0799 (Fax)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRENA SMAJLAJ, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BROCADE COMMUNICATIONS SYSTEMS INC., et al,<br><br>    Defendants._____/ | No. C 05-02042 CRB<br><br>**CLASS ACTION**<br><br>**ORDER APPOINTING LEAD PLAINTIFF** |

Now before the Court in this securities class action are competing Motions to Appoint Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). After carefully considering the briefs of the applicants, including two rounds of supplemental briefing, and with the benefit of two oral arguments, the Court hereby APPOINTS Arkansas Public Employees' Retirement System as Lead Plaintiff. Accordingly, the Court DESIGNATES Nix, Patterson & Roach LLP and Patton, Roberts, McWilliams & Capshaw LLP as Co-Lead Counsel, and Kaplan Fox & Kilsheimer LLP as Liaison Counsel to the putative class.

## BACKGROUND

Plaintiffs allege that Brocade Communications, the corporate defendant in this action, made several material misstatements and failed to disclose improper accounting practices and guidelines for granting stock-based compensation. According to plaintiffs, these faulty

practices resulted in corporate defendant restating its financial statements twice and an announcement that stock-based compensation would be recorded. These three announcements each resulted in the share prices falling immediately thereafter. The class period has been defined as February 21, 2001 to May 15, 2005.

The following putative plaintiffs have moved to be appointed Lead Plaintiff: (1) Intrepid Capital Management ("Intrepid"); (2) Arkansas Public Employees Retirement System ("APERS"); (3) Oklahoma Firefighter Pension & Retirement System ("Oklahoma Firefighters"); (4) John Geary, III and Justin Kaplan ("Geary Group"); and (5) Giulio Cessario.

The Court held oral argument on the designation of a lead plaintiff on August 26, 2005, and October 7, 2005, and both times permitted supplemental briefing in order to gather more information about Intrepid Capital Management's standing, structure, transparency and authority to serve as Lead Plaintiff. The Court also permitted limited discovery concerning Intrepid, including a deposition of its corporate representative.

## DISCUSSION

### I. Lead Plaintiff Designation

#### A. Legal Standard

The PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff') in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(I). The Act creates a rebuttable presumption as to who is the most adequate plaintiff:

> Subject to subclause (II), for purposes of clause (I), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that--
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);

2

        (bb) in the determination of the court, has the largest financial interest in the

        relief sought by the class; and

        (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of

        Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 78u-4(a)(3)(B)(iii)(I).

      In addition to inquiring into which plaintiff has the greatest financial interest, the Court must also find that the lead plaintiff "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." The only Rule 23 factors that are relevant are typicality and adequacy of representation. In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998). The typicality requirement is satisfied when: "(1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct." In re Applied Signal Tech., Inc. Sec. Litig., 2005 WL 1656886, *3 (N.D. Cal. 2005). Adequacy is met where the proposed lead plaintiff has no interests antagonistic to the proposed class, and when they have retained capable counsel. Id.

### B. Presumptive Lead Plaintiff

      Pursuant to the requirements of the PSLRA, the Court finds that Intrepid Capital Management, with a purported loss of $5,162,982, has the greatest financial interest in the relief sought by the class. As a result, Intrepid benefits from a rebuttable presumption that it is the most adequate lead plaintiff. The other movants, particularly APERS and Oklahoma Firefighters, challenge this presumption based on assertions that Intrepid, a hedge fund management company, does not have standing, will not fairly and adequately protect the interests of the class, and will be subject to unique defenses.

### C. Adequacy and Typicality

The Court, in appointing a Lead Plaintiff, acts as the gatekeeper for absent class members. In that role, the Court must ensure that this action will be litigated as effectively and efficiently as possible, and that there will be as few procedural or tangential impediments as possible. The Court is not convinced that Intrepid is an adequate representative for the putative class.

The Court has struggled, despite several rounds of briefing and two oral arguments, to determine the precise corporate structure of Intrepid Capital Management, which of its hedge funds actually held stock in corporate defendant, who manages which hedge funds, and who, if anyone, has authority and permission from limited partners to proceed with this litigation.

In particular, the Court is concerned about an apparent reluctance by Intrepid to turn over documentation of its authority to litigate this matter to the Court, as well as the continuous "new" revelations that appear to expose the somewhat complicated and intricate structure of the company. Despite declarations to the contrary, it is now apparent that there are two different management companies for three different hedge funds, yet only one of the management companies has applied to be lead plaintiff. While this type of structure may be common in the hedge fund industry, it is certainly atypical of the class as a whole. It also raises additional concerns about Intrepid's standing to be lead plaintiff, even setting aside the proposed substitution of the real parties in interest that was briefed in the most recent round of submissions. Because it is unclear which funds held Brocade stock, whether Intrepid Capital Management has authority to act on behalf of those funds, and whether any other Intrepid management companies would need to authorize this suit and the production of any documents, Intrepid is likely to face unique defenses. For example, to the extent that an offshore fund under Intrepid's management would be a lead plaintiff, it is not subject to United States tax laws and would therefore have a different set of motivating concerns if and when settlement negotiations occurred. Moreover, it is not clear from the pleadings that Intrepid has authorization from its limited partners to turn over documents that may become relevant and important in this litigation.

4

In sum, there are too many questions surrounding Intrepid's standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole. Taken together, these concerns lead the Court to conclude that Intrepid will not adequately represent the interests of the plaintiff class. As a result, the presumption in favor of Intrepid is overcome, and the Court moves to the next largest financial stake in the outcome of the matter.[1]

### D. APERS

APERS and Oklahoma Firefighters both suffered losses of approximately $1.5 million, but Oklahoma Firefighters has agreed to support the application of APERS to be Lead Plaintiff. APERS, therefore, is presumptively the adequate plaintiff subject to rebuttal. The Geary Group, a group of two unrelated individuals who can not qualify as a "group" under the PSLRA, claims that APERS' losses are actually only $1.2 million. The Court is not persuaded by the Geary Group argument since it does not present adequate proof that APERS' loss calculation is incorrect. The Court concludes that APERS is a large pension fund in Arkansas that is typical of other class members and will adequately and properly represent the class in this matter.

//

//

//

//

//

---

[1] The Court additionally notes that the decision regarding Intrepid did not result from any conclusions regarding substituting real parties in interest after the 60-day filing period or because of the unique investing strategies of hedge funds, including short selling. These concerns did not factor into the Court's conclusion.

5

**CONCLUSION**

For the foregoing reasons, the Court concludes that the presumption in favor of Intrepid Capital Management is rebutted. The Court therefore APPOINTS Arkansas Public Employees' Retirement System as Lead Plaintiff. Accordingly, the Court APPROVES the designation of Nix, Patterson & Roach LLP and Patton, Roberts, McWilliams & Capshaw LLP as Co-Lead Counsel, and Kaplan Fox & Kilsheimer LLP as Liaison Counsel. Counsel for APERS shall file a consolidated amended complaint by March 3, 2006.

**IT IS SO ORDERED.**

Dated: January 12, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE