**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT H. BURCH, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,<br><br>    Defendants. | Case No. 1:08-CV-01029-WHP |
| RUSSELL PATRICK, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,<br><br>    Defendants. | Case No. 1:08-CV-02463-WHP |

**RESPONSE OF SLM VENTURE TO THE DECLARATION OF ARTHUR N. ABBEY IN RESPONSE TO THE JUNE 30, 2008 ORDER**

Lead Plaintiff movant SLM Venture respectfully submits this response to the Declaration of Arthur N. Abbey in Response to the June 30, 2008 Order (the "Abbey Declaration"), filed July 8, 2008.

## I. ARGUMENT

### A. The Westchester Movants Have Failed To Comply With The Court's June 30, 2008 Order

On June 30, 2008, the Court ordered Westchester Capital Management and Green & Smith Investment Management (the "Westchester Movants") to submit "any further *evidence* that they have unrestricted decision-making authority over all five funds that purchased shares of SLM and authority to maintain this action on behalf of all of those funds." Order at 2 (italics supplied). On July 8, 2008, the Westchester Movants filed the Abbey Declaration in response to the Court's Order. The Abbey Declaration attaches eight exhibits (identified as "consents"), which purport to "confirm" that the Westchester Movants have unrestricted decision-making authority and authority to maintain this action on behalf of all five funds.

The exhibits to the Abbey Declaration fail to comply with the Court's Order for several reasons. First, rather than submit copies of investment management agreements vesting in the Westchester Movants the authority to initiate securities litigation, or even quote from relevant portions of those documents, the Westchester Movants have instead submitted unsworn, inadmissible hearsay statements from a disparate collection of individuals, in some cases on behalf of previously unidentified funds and offshore entities. The Court is left to guess as to the extent of the authority of these individuals to speak for the funds in question. Second, evidentiary infirmities aside, the exhibits do not demonstrate that the Westchester Movants have "unrestricted decision-making authority" and "authority to maintain this action." Third, at least some of the exhibits contradict the sworn Certification of Lead Plaintiff previously filed on behalf of the Westchester Movants. Finally, the identification at this late stage of previously undisclosed entities affiliated in unspecified ways with the Westchester Movants raises further concerns about the Westchester Movants' adequacy and typicality to represent the Class given the complex and opaque relationships between these entities.

1

1.     **The Statements in the Exhibits are Inadmissible Hearsay**

Each of the exhibits to the Abbey Declaration cites to one or more investment advisory agreements as the basis for the grant of unrestricted decision-making authority or the authority to maintain this action. The underlying agreements referenced in the exhibits are missing. The Westchester Movants make no attempt either to explain their failure to produce these agreements or even to quote from any portion of the agreements. Instead, the Westchester Movants rely on unsworn statements from individuals who offer unsupported, conclusory opinions about the contents of the documents. These are classic hearsay statements, inadmissible under Federal Rules of Evidence 801 and 802.

For example, Exhibit D to the Abbey Declaration is brief statement signed by Steven Garner, "Chief Operating Officer of MSS Capital Limited, sub-investment manager of The FTSEhx Fund SPC, action [sic] solely in respect of MSS Merger Arbitrage 2," purporting to "confirm" that one of the Westchester Movants has unrestricted decision-making authority over the MSS Merger Arbitrage 2 Fund. Exhibit D is not on any corporate letterhead, nor is it styled as a declaration or an affidavit. Mr. Garner signed the document in his capacity as Chief Operating Officer of MSS Capital Limited (not as an official of the fund itself), but did not do so under penalty of perjury. No foundational testimony is offered to establish that Mr. Garner knows the contents of the April 13, 2004 Investment Management Agreement or that he has authority to act thereunder. Exhibit D is hearsay under Federal Rule of Evidence 801, in that it is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," namely that the Westchester Movants have unrestricted decision-making authority over the MSS Merger Arbitrage 2 fund. This statement does not fall within any of the exceptions to the hearsay rule, lacks all indicia of reliability and, therefore, is inadmissible under Federal Rule of Evidence 802.

All seven of the other exhibits to the Abbey Declaration suffer from the same fatal evidentiary flaws as Exhibit D, in that all are unsworn, out-of-court statements offered for the truth of the matters asserted therein. The exhibits do not offer sworn testimony or attach legal documents that would support the conclusory statements made in the exhibits. If the Court

wished to accept "on faith" the Westchester Movants' assertions that they are authorized to initiate litigation on behalf of the funds, there would have been no reason for the Court to enter the June 30, 2008 order directing the submission of "evidence" of "unrestricted decision-making authority" and "authority to maintain this action on behalf of all five of those funds." By failing to submit such evidence, the Westchester Movants have failed to comply with the Court's June 30 order.

> 2.  **The Exhibits Fail to Demonstrate that the Westchester Movants Have "Unrestricted Decision-Making Authority" and "Authority to Maintain this Action"**

The Westchester Movants have not demonstrated that they have "unrestricted decision-making authority" and "authority to maintain this action" on behalf of the five funds. As pointed out by competing Lead Plaintiff movant Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW 80"), at best the exhibits only purport to "confirm" or describe a "belief" that the agreements manifest such authority. *See* SMW 80 Response at pp. 4-7 (filed July 10, 2008). These expressions of belief fall are not the evidence called for by the Court's June 30, 2008 Order.

Moreover, the exhibits to the Abbey Declaration fail to establish that the Westchester Movants had unrestricted decision making authority over the funds. As an example, Exhibit D purports to confirm that Westchester Movant Green & Smith Investment Management has "full discretion, control and unrestricted decision making authority over all investments" made by MSS Merger Arbitrage 2. According to documents on the internet, however, *MSS Capital Advisors Limited*, not Green & Smith Investment Management, is "*the exclusive advisor and manager of the FTSEhx Fund SPC*." (Declaration of Aaron M. Sheanin in Support of Response of SLM Venture to the Declaration of Arthur N. Abbey in Response to the June 30, 2008 Order, Ex. A.) MSS Capital Advisors Limited's description of FTSEhx Fund SPC is also inconsistent with Green & Smith Investment Management's claim that it has full discretion, control and unrestricted decision making authority over MSS Merger Arbitrage 2's investments. MSS Capital Limited is a sub-investment manager of FTSEhx Fund SPC, which appears to have some

3

unidentified advisory relationship to MSS Merger Arbitrage 2. According to MSS Capital Advisors Limited, FTSEhx Fund SPC is a hedge fund that "perfectly tracks" a globally based hedge fund index, such that its investment manager would not appear to have discretion, control or unrestricted decision making authority over its investments. (*Id.*) If the FTSEhx Fund SPC is a hedge fund designed to track the performance of "the universe of open, investable hedge funds, appropriately diversified by Trading Strategy and Management Style," (*id.*, Ex. B at 1.2), questions arise as to the basis of MSS Merger Arbitrage 2's trading decisions. Were these trades driven by the fund's need to track the FTSEhx Fund SPC hedge fund index or discretionary decisions of Green & Smith Investment Management? Neither the Court nor other moving counsel can answer these questions on the basis of the information supplied, as the relationships between and among Green & Smith Investment Management, FTSEhx SPC, MSS Merger Arbitrage 2, and MSS Capital Advisors Limited have not been explained. The same holds true for other entities purportedly managed by the Westchester Movants.

### 3. Some of the Exhibits are Inconsistent with the Sworn Certification of Lead Plaintiff Filed by the Westchester Movants

The sworn Certification of Lead Plaintiff originally filed by the Westchester Movants identified five funds that purportedly invested in Sallie Mae stock: The Merger Fund, The Merger Fund VL, GL Master Trust, MSS Merger Arbitrage 2 and the Institutional Benchmarks Series (Master Feeder) Limited. Declaration of Nancy Kaboolian, Ex. B (filed March 31, 2008). It now appears that Institutional Benchmarks Series (Master Feeder) Limited is *not* one of the five funds that purchased Sallie Mae stock. Exhibits G and H to the Abbey Declaration define "Cursa Series" as "the Fund" that purchased SLM stock, not Institutional Benchmark Series (Master Feeder) Limited. The exhibits fail to describe the relationships between and among the Cursa Series Fund, Institutional Benchmark Series (Master Feeder) Limited, and the Westchester Movants. Nor do they explain why the Westchester Movants have never previously identified Cursa Series as one of the funds that purchased Sallie Mae stock. These inconsistencies and apparent lack of transparency cast further doubt on the reliability and adequacy of the Westchester Movants to represent the class.

### 4. The Exhibits Identify a Number of New Entities Somehow Affiliated with the Westchester Movants, Raising Serious Questions About Adequacy and Typicality

The sworn Certification of Lead Plaintiff filed by the Westchester Movants identified seven entities with some interest in this litigation: Westchester Capital and Green & Smith, as the investment advisers, and the five funds. The exhibits to the Abbey Declaration now identify seven additional entities somehow affiliated with the Westchester Movants or the five funds. Most of these newly disclosed entities are offshore entities, and all appear to have varying degrees of investment or managerial authority over the funds. These entities include: MSS Capital Limited, the FTSEhx Fund SPC, MSS Fund Management Limited, Winchester Global Trust Company, Credit Agricole Structured Asset Management Advisers LLC, Starview Capital Management LLC, and "Cursa Series."

The exhibits to the Abbey Declaration hint at the complexity of the relationships behind the Westchester Movants and the various funds managed to some degree by Green & Smith Investment Management. The exhibits provide no explanation of the relationships between these fourteen various entities, the flow and management of funds, and the trading and legal authority among the entities. The exhibits raise serious questions about the Westchester Movants' adequacy and typicality to represent the Class. *See* SMW 80 Response at pp. 7-8 (quoting *Smajlaj v. Brocade Communications Systems, Inc.*, No. C 05-02042 CRB, slip op. at *5 (N.D. Cal. Jan. 12, 2006) (refusing to appoint hedge fund manager as lead plaintiff where "there are too many questions surrounding Intrepid's standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole").

### B. SLM Venture Should Be Appointed Lead Plaintiff

Although the Westchester Movants claim to have sustained the greatest financial loss, they have failed to produce evidence that they have the requisite investment and legal authority to serve as a lead plaintiff on behalf of the five underlying funds that purchased Sallie Mae stock. SLM Venture is therefore presumed to the "most adequate plaintiff" under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), as it has the second largest financial interest and has otherwise

5

demonstrated its typicality and adequacy to represent the Class.  *See Zaltzman v. Manugistics Group, Inc.*, 1998 U.S. Dist. LEXIS 22867 (D. Md. Oct. 8, 1998) (appointing general partnership that met typicality and adequacy requirements and had substantial financial interest as lead plaintiff).   SLM Venture has full authority to sue on its behalf and to manage this litigation.  Docket No. 35, ¶ 4.

Relying on *Camden Asset Mgmt. v. Sunbeam Corp.*, No. 99-8275, 2001 U.S. Dist. LEXIS 11022, at *46-47 (S.D. Fla. July 3, 2001), SMW 80 criticizes SLM Venture for failing to respond at oral argument on the motions for lead plaintiff to SMW 80's claims that it is unsuited to serve as lead plaintiff.  *See* SMW 80 Response at n.2.  In *Camden Asset Management*, the district court denied class certification on the grounds that classwide reliance could not be presumed in an action brought on behalf of purchasers of convertible debentures sold in an inefficient market, and that the class representatives "employed a hedge or convertible arbitrage strategy" to make their investment decisions and did not rely on the integrity of the company's financials.  *Id.*  SLM Venture invested in Sallie Mae stock in anticipation of the company's acquisition by the Flowers Group, announced early in the Class Period.  Docket No. 28, p. 7.  SLM Venture relied on the integrity of the market and on Sallie Mae's public statements about its projected earnings, business and prospects, and the enforceability of the merger agreement in purchasing Sallie Mae stock.  *Id.*; Docket No. 35, ¶ 3.  The decision in *Camden Asset Management* lends no support to SMW 80's suggestion that SLM Venture is unsuited to serve as lead plaintiff.  There is no basis for SMW 80's speculation that SLM Venture is atypical or subject to unique defenses.

//
//
//
//
//
//
//
//
//

6

## II.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in its prior submissions, SLM Venture respectfully requests that the Court grant its motion in full and deny the competing motions for lead plaintiff and appointment of lead counsel.

DATED:  July 14, 2008                                       Respectfully submitted,

**GIRARD GIBBS LLP**

By:   *Aaron M. Sheanin*
      Aaron M. Sheanin (Pro Hac Vice)

Daniel C. Girard
Jonathan K. Levine (JL-8390)
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4500
Facsimile:  (415) 981-4846

**Proposed Lead Counsel**

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY  10004
Telephone:  (212) 584-0757
Facsimile:  (212) 584-0799

**Local Counsel**

## CERTIFICATE OF SERVICE

I, Aaron M. Sheanin, hereby certify that on July 14, 2008, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

1. **RESPONSE OF SLM VENTURE TO THE DECLARATION OF ARTHUR N. ABBEY IN RESPONSE TO THE JUNE 30, 2008 ORDER**

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of July, 2008 at San Francisco, California.

　　　　　　　　　　　　　　　　　　　　　　　　　　　*/S/ Aaron M. Sheanin*