**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT H. BURCH, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    -v-<br><br>SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,<br><br>                                    Defendants. | Civil Action No. 08-cv-01029 (WHP)<br><br>ECF Case |
| RUSSEL PATRICK, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    -v-<br><br>SLM CORPORATION, ALBERT L. LORD, CHARLES ELLIOTT (C.E.) ANDREWS and ROBERT S. AUTOR,<br><br>                                    Defendants. | Civil Action No. 08-cv-02463 (WHP)<br><br>ECF Case |

**WESTCHESTER MOVANTS' REPLY TO THE RESPONSES OF SHEET**
**METAL WORKERS' LOCAL NO. 80 PENSION TRUST FUND AND SLM**
**VENTURE TO THE DECLARATION OF ARTHUR N. ABBEY IN**
**RESPONSE TO THE COURT'S**
**JUNE 30, 2008 ORDER**

The Westchester Movants, Westchester Capital Management, Inc. ("Westchester Capital") and Green & Smith Investment Management L.L.C. ("Green & Smith"), submit this reply to the responses of Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW 80") and SLM Venture ("SLM Venture") to Westchester Movants' submission pursuant to the Court's Order of June 30, 2008 ("June 30 Order"). The full text of the June 30 Order is attached to the Declaration of Stephen T. Rodd submitted herewith as Exhibit 1 ("Rodd Decl. ___").

## I.    INTRODUCTION

SMW 80 and SLM Venture have exploited the Court's request to the Westchester Movants, asking for submission of any additional evidence of their unrestricted decision making authority and authority to act as lead plaintiffs on behalf of five funds they manage, to rehash and reargue their prior opposition to Westchester Movants' motion, SMW 80 and SLM Venture have failed to present any proof or even significant doubt to overcome the presumption of adequacy of the Westchester Movants, which invested in SLM stock for certain of their client funds and suffered losses that dwarf those of the opposing lead plaintiff movants. Appointment of the Westchester Movants is thus fully in accordance with the policy mandated by the Private Securities Law Reform Act ("PSLRA").

The documents attached to the Declaration of Arthur N. Abbey in Response to the June 30, 2008 Order ("Abbey Declaration") confirm the *prima facie* case for the presumptive lead plaintiff qualifications of the Westchester Movants.    The documents confirm that the Westchester Movants as advisers and managers of the five funds they acted with full authority in making the investment decisions and executing the trades in SLM.    The losses in those investments exceeded $38 million on a LIFO basis for the five funds for whose accounts Westchester Capital and Green & Smith purchased SLM shares. One of those funds, The Merger Fund, suffered over $35 million on a LIFO and FIFO basis of those total losses.[1] The documents provided also confirm that the Westchester Movants had and have authority to act as

---

[1]    The Merger Fund is a mutual fund available to retail customers of major brokerage and financial companies, including Schwab Retail and Scottrade NTF. The Merger Fund's shares have a Net Asset Value ("NAV") of $14.51 as of July 16, 2008 and the minimum initial investment is $2,000. The Merger Fund has almost 80,000 shareholder accounts and a representative sampling of those accounts shows that over 60% of shareholders own less than 1,000 shares.  See excerpts from a report to the Board of Trustees of The Merger Fund and The Merger Fund VL, dated July 15, 2008, and a copy of a print out from Yahoo Finance concerning The Merger Fund listing, *inter alia,* the NAV and the numerous financial companies offering The Merger Fund to their retail customers. Rodd Decl. Ex.2. The report to the Board of Trustees has been redacted to remove the names of specific brokerage firms providing the information.

2

lead plaintiffs in class action litigations for each of the funds. Because they have no proof that the Westchester Movants are inadequate representatives, SMW 80 suggests that the relationships of the funds to the Westchester Movants are too complex and that certain of the confirmations of authority are in doubt, quibbling over the significance of authority to pursue class action lawsuits "on behalf of" or "for the benefit of" the funds they advise. This is insufficient to overcome the presumption in favor of the Westchester Movants, nor does it create doubt that the Westchester Movants are inadequate representatives or subject to attack by defendants that they lack standing to sue.

Indeed, Westchester Capital Management, investment adviser to The Merger Fund and Merger Fund VL, was appointed and has been serving since February 2007 as Lead Plaintiff (without any attack by defendants on its standing) in connection with investments in the IMAX Corporation it made for client funds including The Merger Fund and The Merger Fund VL. In that case, Judge Buchwald approved the lead plaintiff motion of Westchester Capital over objections by a contender (Snow Capital Investment Partners, L.P. represented there by the same counsel now representing SMW 80 here), finding, *inter alia*, that the opposition's evidence and argument that Westchester Capital had insufficient authority and lacked standing to prosecute the action were "inconclusive at best". *Kaplan v. Gelfond*, 240 F.R.D. 88, 95 (S.D.N.Y. 2007). Judge Buchwald based this result on the representations of Westchester Capital's Chief Compliance Officer Roy Behren identical to those submitted here, and in addition took judicial notice of the Power of Attorney contained in a registration statement filed with the SEC by The Merger Fund VL that designated Frederick W. Green, then and now the President of Westchester Capital Management, as attorney-in-fact and agent for that fund. *Id.* at n.9. Here, the demonstration of unrestricted authority in the Westchester Movants to control the investments of

3

and pursue securities litigation for the client funds is established to an even greater degree than in *Kaplan,* and the proffer by the contending parties is also "inconclusive at best."

The legal arguments presented by SMW 80 and SLM Venture have for the most part been addressed previously in the Westchester Movants' Reply Memorandum of Law filed on April 28, 2008, in oral argument on May 16, 2008, and in the letter to the Court from their counsel dated May 29, 2008,[2] they will be addressed only briefly below.  Rodd Decl. Ex. 3.  The continued attack by SMW 80 and SLM Venture on the evidence presented by the Westchester Movants at the Court's request is entirely speculative and, particularly with regard to the suggestion that the five funds, for which Westchester Movants are the sole managers and advisers, may have engaged in undisclosed hedging or other trading in SLM securities that might reduce the $38 million in losses suffered, insulting.[3]  In fact, it is because the Westchester Movants, *sole* investment advisers to the funds, bear the responsibility, not just the authority, to make and manage securities investments for the funds, that they have tried to assure that all of the purchases of SLM stock by Westchester Movants on behalf of all of the interested funds they manage were included in the motion for appointment as lead plaintiffs.   However, had Westchester Movants made the motion for lead plaintiff without revealing SLM transactions they had made on behalf of all of the funds for which they made the trading decisions, other lead plaintiff contenders or defendants would certainly criticize the Westchester Movants for failure to disclose them.

---

[2]      On July 14, 2008, lead plaintiff contender SLM Venture filed a response to the Westchester Movants Declaration and to SMW 80 Movant's response filed on July 10 insofar as the SMW 80 response addresses SLM Venture's application for lead plaintiff.  Westchester Movants do not intend to address the SLM Venture response in a separate memo, as the arguments concerning Westchester Movants are similar to those asserted by SMW 80.

[3]      Westchester Movants have asserted that they are the sole investment managers for the funds, and responsible officers or trustees of the funds have confirmed that relationship.  *See* Exhibits B, D, F and H to the Abbey Declaration.

4

Indeed, Westchester Movants could have chosen to exclude from the motion the smaller funds they manage, and Westchester Capital Management alone would still qualify as a presumptive lead plaintiff based solely on the SLM stock transactions it conducted for two funds, The Merger Fund, a Massachusetts business trust and The Merger Fund VL, a Delaware statutory trust.   This would have avoided much if not all of the barrage of unsupported speculation about the other funds managed by Green & Smith. The losses of The Merger Fund and The Merger Fund VL alone, exceeding $35 million on a LIFO and FIFO basis on purchases of over 3.9 million shares of SLM common stock during the proposed class period, still far exceed the losses of SMW 80 ($524,000) and SLM Venture ($3,910,847).   A chart showing these losses, individually, for The Merger Fund and The Merger Fund VL on a LIFO and FIFO basis, is attached to the Rodd Decl. as Exhibit 4.

In any event, for the reasons set forth herein, based on the documentation provided to the Court and the other arguments and evidence provided in support, the appointment of the Westchester Movants as sole Lead Plaintiffs for the putative class of SLM purchasers pursuant to the PSLRA is appropriate and their motion should be granted in full.

## II.    STATEMENT AND ARGUMENT

A.    **The Documentation Provided Pursuant to the June 30 Order is Compelling Evidence of the Adequacy of the Westchester Movants to Act as Lead Plaintiffs With Respect to the Investments on Behalf of the Funds They Manage**

This Court's June 30 Order stated, *inter alia*:

The Westchester Movants submitted a certification from Roy Behren, Chief Compliance Officer, stating that the two investment advisors have "unrestricted decision making authority with respect to the funds they advise and manage" and that he is "authorized to undertake all acts" on behalf of the Westchester Movants. On June 24, 2008, the Westchester Movants also submitted a Consent Action of the Board of Trustees for two funds managed by Westchester Capital

5

Management Authorizing the commencement of lawsuits alleging the violations of securities laws. The Court directs the Westchester Movants to submit by July 14, 2008 any further evidence that they have unrestricted decision making authority over all five funds that purchased shares of SLM and authority to maintain this action on behalf of all those funds.

The documents submitted in response to the June 30 Order confirm, per the trustees or senior officers of each fund, the authority of Westchester Capital or Green & Smith, as investment advisers and managers, both to make and implement investment decisions for each fund and to commence and prosecute lawsuits to protect the interests of the funds in the securities purchased for those funds. The documents submitted are the following:

(a)    **The Merger Fund and The Merger Fund VL**

Consent Action of the Board of Trustees of The Merger Fund and The Merger Fund VL ("the Funds"). These Funds are respectively, a Massachusetts Business Trust and a Delaware statutory trust, and the same persons serve on the boards of each. This Consent Action confirms the two boards' **"delegation of authority to the Adviser [Westchester Capital Management] to commence and pursue Lawsuits** [defined as individual and class action lawsuits alleging violations of securities laws affecting the interests of the Funds] **on behalf of the Funds and/or participate as lead plaintiff. . . ."** Exhibit A to the Abbey Declaration. (Emphasis added.) Confirmation by the Vice President of the Funds, Bonnie L. Smith, that under the respective investment advisory agreements between the Funds and Westchester Capital, Westchester Capital has **"full power and authority to manage and supervise the business of the Funds which powers and authority include the full discretion, control and unrestricted decision making authority over all investments made by the Funds"**. Exhibit B to the Abbey Declaration. (Emphasis added.)

(b) **GS Master Trust**

Consent Action of the Trustee of the GS Master Trust, a Bermuda trust having a sole Trustee. This Consent Action, executed by an officer of the sole trustee, confirms that **"the Trustee has delegated full power and authority to manage and supervise the business of the Trust to Green & Smith which powers and authority include authority for Green & Smith to commence the Lawsuit [defined as the instant action] on behalf of the Trustee in respect**

6

of the Trust and/or participate as lead plaintiff or otherwise in the Lawsuit." Exhibit E to the Abbey Declaration. (Emphasis added.) Consent signed by an officer of the sole Trustee confirming that the Trustee has **"delegated full power and authority . . . which powers and authority include the full discretion, control and unrestricted decision making authority over all investments made by the Trust."** Exhibit F to the Abbey Declaration. (Emphasis added.)

(c)    <strong>MSS Merger Arbitrage 2</strong>

Letter executed by the Chief Operating Officer of the sub-investment manager responsible for administration of the MSS Merger Arbitrage 2 Fund, speaking for that fund, confirming, among other things, **"our delegation of authority to Green & Smith to commence and pursue Lawsuits** [defined to include class actions alleging violations of securities laws with respect to securities in which the Fund has an interest] **on behalf of the Fund and/or participate as lead plaintiff or otherwise in Lawsuits for the benefit of the Fund."** Exhibit C to the Abbey Declaration. (Emphasis added.) Letter signed by the same Chief Operating Officer speaking for the MSS Merger Arbitrage 2 Fund, confirming that under the Investment Management Agreement to which Green & Smith and the Merger Arbitrage Fund 2 are parties, Green & Smith **"has full power and authority to manage and supervise the business of the Fund [including] the full discretion, control and unrestricted decision making authority over all investments made by the Fund."** Exhibit D to the Abbey Declaration. (Emphasis added.)

(d)    <strong>Institutional Benchmarks Series (Master Feeder) Limited</strong>

Letter executed by the Chief Operating Officer of the investment manager responsible for the administration of the Institutional Benchmarks Series (Master Feeder) Limited ("IBSL") confirming among other facts that with respect to the Cursa Series, which is a segregated account of the IBSL on whose behalf Green & Smith invested in SLM common stock, **"our delegation of authority to Green & Smith to commence and pursue Lawsuits on behalf of the Fund**

**and/or participate as lead plaintiff or otherwise in Lawsuits for the benefit of the Fund."[4]**
Exhibit G to the Abbey Declaration. (Emphasis added.)

Letter from the same Chief Operating Officer confirming that the Investment
Management Agreement to which Green & Smith and IBSL are parties, **"Green & Smith has
full power and authority to manage and supervise the trading activities of the Fund ( the
Cursa Series) which powers and authority include the full discretion, control and
unrestricted decision making authority over all investments made by the fund."** Exhibit H
to the Abbey Declaration. (Emphasis added.)

The Westchester Movants respectfully submit that the documentation cited above and
attached as Exhibits to the Abbey Declaration sufficiently demonstrate that Westchester Capital
and Green & Smith have the full discretion and unrestricted authority to make investment
decisions and execute trades for the funds that each manages and that the Westchester Movants
have full authority to participate as a party and lead plaintiff in this action and other actions to
enforce securities law violations that have adversely affected an investment of one or more of the
funds. The evidence provided by these documents[5], along with the prior submissions by the
Westchester Movants in support of their motion for appointment as Lead Plaintiffs, more than
satisfies the requirements of the PSLRA.

**B.    The Objections of SMW 80 and SLM Venture to the Evidence Provided by
the Westchester Movants Are Not Persuasive**

The concerns raised by SWM 80 and by SLM Venture to the effect that the information
provided by the Westchester Movants is incomplete, overly complex, raises additional questions
or should be disregarded as hearsay are not persuasive. In the face of presumptive losses that

---

[4]    SMW 80 goes to great lengths to quibble with the language of these submissions in order to minimize their
import. As to this letter, SMW 80 argues that the use of the expression "for the benefit of the Fund" here means that
Green & Smith does not have authority to be seek to be lead plaintiff, because this expression differs from the earlier
use of "on behalf of the Fund" relating to the authority to commence and pursue Lawsuits. SMW 80 Response at 6
(filed July 10, 2008). The distinction argued is tortured and unpersuasive.
[5]    SLM Venture argues that the documents provided are merely hearsay. SLM Venture Response at 2-3 (filed
July 14, 2008). However, this is not a trial, nor a motion for summary judgment on the merits. Indeed, the PSLRA
requires no "proof", admissible or otherwise, from the lead plaintiff proponent. To the contrary, the only proof
required under the PSLRA is to be provided by the party asserting the inadequacy of a presumptive lead plaintiff. 15
U.S.C. 78u-4(a)(3)(B)(iii)(II). The documentation provided is more than sufficient for this Court to take it into
account its substance in making a decision on appointment of lead plaintiff.

surpass their own by tens of millions of dollars, the competitors for lead plaintiff have not demonstrated with any proof or compelling argument that the Westchester Movants are in any way inadequate lead plaintiffs, are subject to unique defenses or that they lack legal standing to survive as lead plaintiffs. The burden is not upon the presumptively adequate lead plaintiff to "prove" its adequacy, but to provide sufficient satisfaction to the court that the presumption of adequacy is warranted and that there is no credible evidence that the lead plaintiff will not fairly and adequately protect the interests of the class or that the lead plaintiff is subject to unique disabling defenses. *Kaplan*, 240 F.R.D. at 94-96.

SMW 80's and SLM Venture's efforts to analogize the Westchester Movants to the unsuccessful lead plaintiff contender Intrepid Capital Management in *Smajlaj v. Brocade Commc'ns Sys., Inc.*, No. C 05-02042, slip op. (N.D. Cal. Jan. 12, 2006), fails. Although it is not clear from the opinion in *Brocade* how extensive a documentary record the court had before it, it is clear that Intrepid initially sought to be lead plaintiff with regard to funds for which it was not even the investment adviser. *Id.* at \*4. That is certainly not the case here, as the evidence submitted demonstrates. Nor is there any lack of clarity as to which funds owned SLM shares or that either Westchester Capital or Green & Smith were the sole decision makers with regard to those investments. *Id.*

Likewise, SMW 80's attempt to analogize this case to *In re eSPEED, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005) fails. SMW 80 Response at 5. In that case the unsuccessful lead plaintiff contender, Adib, could only muster the argument that he was "akin to an investment advisor" to other relatives for whom he sought to act, and he was unable to represent that the others had authorized him to act for them nor that he had made all the investments for the others. The court, stated, "[F]or an investment advisor to attain standing on behalf of investors the transactions in question must have been executed as if by a single person." *Id.* at 98. Westchester Movants do not disagree with the standards discussed in *Brocade* and *eSpeed*, required to be met by of a plaintiff investment adviser or manager to establish standing, but submit that the record presented here differs markedly from those cases and fully satisfies those standards.

9

## CONCLUSION

For the reasons set forth herein and in their prior submissions in support of their motion pursuant to the PSLRA, the Westchester Movants respectfully request that the Court: (i) appoint Westchester Capital and Green & Smith as Lead Plaintiff in these actions, and (ii) approve the choice of Abbey Spanier Rodd & Abrams, LLP to serve as Lead Counsel. The Westchester Movants firmly contend that the record herein fully satisfies the requirements of the PSLRA and justifies the granting of their motion in full. However this Court has the discretion should it deem it appropriate to appoint Westchester Capital as sole Lead Plaintiff with respect to its unrestricted authority to invest for and pursue securities litigation on behalf of The Merger Fund and The Merger Fund VL, which collectively have over 90% of the losses suffered by the Westchester Movants.

Dated:  July 16, 2008

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: _____
Arthur N. Abbey (AA 8074)
Stephen T. Rodd (SR 8228)
Nancy Kaboolian (NK 6346)
212 East 39th Street
New York, New York 10016
Tel:    (212) 889-3700
Fax:    (212) 684-5191

Counsel for the Westchester Movants and Proposed Lead Counsel for the Class

Additional Plaintiffs' Counsel

**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
Gerald H. Silk
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444