**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
| --- | --- |
| IN RE SLM CORPORATION SECURITIES LITIGATION | Case No. 08 CV 1029 (WHP) |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO THE
SECOND AMENDED CLASS ACTION COMPLAINT**

Peter A. Wald (*pro hac vice*)
Laurie B. Smilan
Jeff G. Hammel
Abid R. Qureshi (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
(212) 906-1200

Counsel for Defendants SLM Corporation, and
Albert L. Lord

October 29, 2010

Defendants SLM Corporation ("SLM" or the "Company") and Albert Lord ("Lord"), through counsel, unless expressly stated otherwise, answer the allegations of the Second Amended Class Action Complaint ("SAC") as follows.[1]   To the extent not explicitly admitted, all other allegations of the SAC are denied.

Defendants deny that the preliminary statement requires a response.   To the extent a response is required, Defendants deny the allegations of the preliminary statement.

1.      Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action, but admit that Plaintiffs purport to bring a securities class action on behalf of a class of all persons who purchased the publicly traded securities of SLM between January 18, 2007 and January 23, 2008, against SLM Corporation, Albert Lord, and Charles Andrews for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.      Defendants deny that SLM makes student loans.  Defendants admit that during the class period, certain of SLM's subsidiaries and affiliates engaged in a wide range of business activities including, at times, the origination, servicing and collection of FFELP loans from which they derived profits.

3.      Defendants are without sufficient information to admit or deny the allegations regarding why students typically assume PELs, and therefore deny the allegation regarding that issue.  Defendants admit that FFELP loans are guaranteed by the federal government but deny the remaining allegations in SAC ¶3.

---

[1]      Charles E. Andrews was dismissed from this case pursuant to a Court Order issued on Sept. 24, 2010, and is therefore no longer a party to this litigation.  Accordingly, he does not respond to any of the allegations in the SAC.

4.      Defendants are without sufficient information to admit or deny the allegations regarding what possibilities PELs offer lenders.  Defendants admit that the federal government caps the interest rate for FFELP loans but denies the remaining allegations in SAC ¶ 4.

5.       Defendants admit that in or about November 2006, SLM entered into negotiations with a private equity group led by J.C. Flowers & Co., Bank of America, and JP Morgan Chase.  The remaining allegations in SAC ¶ 5 are denied.

6.      Defendants deny that SLM makes PELs.  Defendants admit that during the class period, certain of SLM's subsidiaries and affiliates engaged in a wide range of business activities including, at times, the origination, servicing and collection of PELs.  Defendants deny the remaining allegations in SAC ¶ 6.

7.      Defendants admit that when a borrower ends forbearance and enters repayment, the account is considered current.  Defendants deny the remaining allegations of SAC ¶ 7.

8.      Defendants admit that during the Class Period, the Company issued periodic press releases and Securities and Exchange Commission ("SEC") filings, and refer to those press releases and filings for complete and accurate statements of their contents.  Defendants deny the remaining allegations in SAC ¶ 8.

9.      Defendants admit that in April 2007, SLM and the Flowers group entered into a transaction memorialized in written agreements, and refer to those agreements for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 9.

10.      Defendants deny the allegations of SAC ¶ 10.

11.     Defendants admit that if the merger were consummated, Mr. Lord – like other shareholders – would receive compensation for his shares in accordance with the relevant transactional documents.  Defendants also admit that Mr. Lord and Mr. Andrews signed certain filings with the SEC during the Class Period, as that term is defined by the plaintiffs.  Defendants deny the remaining allegations of SAC ¶ 11.

12.     Defendants admit that SLM had certain outstanding equity forward contracts during the Class Period, as that term is defined by the plaintiffs.  Defendants refer to those contracts for a complete and accurate statement of their contents.  Defendants deny the remaining allegations of SAC ¶ 12.

13.     Defendants admit that on December 12, 2007, SLM issued a press release providing an update regarding the proposed transaction with the Flowers group.  Defendants refer to that press release for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 13.

14.     Defendants admit that on December 19, 2007, the Company held a conference call in which Mr. Lord participated.  Defendants refer to the transcript of that conference call for a statement of its contents.  Defendants admit that the closing prices for the Company's stock was $28.87 per share on December 18, 2007, and $22.89 on December 19, 2007, respectively.  Defendants deny the remaining allegations in SAC ¶ 14.

15.     Defendants admit that on January 3, 2008, SLM filed a SEC Form 8-K and refer to that filing for a complete and accurate statement of its contents.  Defendants admit that the closing prices for the Company's stock was $19.16 per share on January 3, 2008, and $16.67 per share on January 4, 2008, respectively.  Defendants deny the remaining allegations in SAC ¶ 15.

16.     Defendants admit that in January 2008, the Company made certain disclosures regarding its equity forward contracts in public SEC filings.  The Defendants refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶16.

17.     Defendants admit that on January 23, 2008, SLM announced its financial results for 2007 on SEC Form 8-K.  Defendants refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶17.

18.     Defendants admit that on January 23, 2008, SLM held a conference call in which Mr. Lord participated.  Defendants refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 18.

19.     Defendants admit that SLM's stock price closed at $57.98 per share on July 9, 2007.  Defendants admit that SLM's stock price opened at $28.85 per share on December 19, 2007.  Defendants deny the remaining allegations in SAC ¶ 19.

20.     Defendants admit that the SAC purports to bring claims against SLM, Mr. Lord, and Mr. Andrews (who was dismissed from this suit, is no longer a defendant, and does not respond to the SAC) for violations of the 1934 Act.  Defendants deny the remaining allegations in SAC ¶ 20.

21.     Defendants admit that plaintiffs purport to bring claims under §§ 10(b) and 20(a) of that Act and SEC Rule 10b-5.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 21.  To the extent that SAC ¶ 21 contains any factual allegations, such allegations are denied.

22.     Defendants admit that plaintiffs purport to invoke this Court's jurisdiction under Section 27 of the 1934 Act.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 22.  To the extent that SAC ¶ 22 contains any factual allegations, such allegations are denied.

23.     Defendants admit that venue is proper in this District.  Defendants deny the remaining allegations in SAC ¶ 23.

24.     Defendants admit that SLM uses the United States mail, engages in interstate telephone communications, and that its shares trade on a national securities exchange. Defendants deny the remaining allegations in SAC ¶ 24.

25.     Defendants admit that the Court issued an order on April 1, 2009, appointing SLM Venture Lead Plaintiff.  The remaining allegations in the first sentence of SAC ¶ 25 state a legal conclusion to which no response is required.  To the extent that the first sentence of SAC ¶ 25 contains any factual allegations, such allegations are denied.  Defendants admit that SLM Venture filed a certification with the Court regarding its stock ownership.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the certification regarding SLM Venture's stock ownership, and on that basis those allegations are denied.  Defendants deny the remaining allegations in SAC ¶ 25.

26.     Pursuant to a Court Order issued on Sept. 24, 2010, all references to Sheet Metal Workers' Local No. 80 Pension Trust Fund are stricken from the SAC, therefore, no response is required to SAC ¶ 26.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the statements in the certification

regarding Sheet Metal Workers' Local No. 80 Pension Trust Fund's stock ownership, and on that basis those allegations are denied.  Defendants deny the remaining allegations in SAC ¶ 26.

27.     Defendants admit that, as of the date of the filing of the SAC, Defendant SLM was a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices at 12061 Bluemont Way, Reston, Virginia.  Defendants admit that the Student Loan Marketing Association was founded in 1972 as a federally chartered, government-sponsored enterprise.  Defendants admit that Student Loan Marketing Association began to privatize its operations in 1997, and the process was completed on December 29, 2004. Defendants further admit that its common stock trades under the symbol "SLM" on the New York Stock Exchange.  Defendants admit that during the Class Period, as that term is defined in the SAC, SLM was the parent company of certain entities that participated in FFELP and originated and serviced PELs.  Defendants deny the remaining allegations in SAC ¶ 27.

28.      Defendants admit the allegations in the first 8 sentences of SAC ¶ 28. Defendants admit that Mr. Lord signed the Company's Form 10-K Annual Report for 2006 and while serving as an officer of the Company, participated in particular meetings and conference calls with securities analysts and investors.  Defendants deny the remaining allegations in SAC ¶ 28.

29.     Defendants deny that Mr. Andrews is a defendant in this case.  Defendants admit the allegations in the first 5 sentences of SAC ¶ 29.  Defendants admit that Mr. Andrews signed SLM's Form 10-K Annual Report for 2006 and Form 10-Q Quarterly Report for the first quarter of 2007 and the certifications accompanying those filings as well as the certifications accompanying SLM's Form 10-Q Quarterly Reports for the second and third quarters of 2007.

Defendants also admit that Mr. Andrews signed the Company's Form 8-Ks announcing SLM's fourth-quarter and year end 2007 results and first-quarter 2007 results. Defendants admit that Mr. Andrews is quoted in certain Company press releases, and participated in meetings and conference calls with securities analysts and investors. Defendants refer to the particular SEC filings, SLM press releases, and transcripts of conference calls for a statement of their contents. Defendants deny the remaining allegations in SAC ¶ 29.

30.     Defendants deny that Mr. Andrews is a defendant in this case. Defendants admit that Mr. Lord was, at the time the SAC was filed, a member of the Board of Directors of SLM. Defendants further admit that in December 2007, Defendant Lord became a senior executive of the Company. Defendants deny the remaining allegations set forth in SAC ¶ 30.

31.     Defendants admit that SLM's common stock and other securities were, and are, registered with the SEC pursuant to the Exchange Act, and its common stock was, and is, traded on the New York Stock Exchange, and governed by the federal securities laws. Defendants are not required to respond to legal conclusions set forth in SAC ¶ 31. To the extent that SAC ¶ 31 contains any remaining factual allegations, such allegations are denied.

32.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 32. To the extent that SAC ¶ 32 contains any factual allegations, such allegations are denied.

33.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 33. To the extent that SAC ¶ 33 contains any factual allegations, such allegations are denied.

34.     Defendants deny that Mr. Andrews is a defendant in this case and the use of the term "defendants" in this Answer to the SAC refers only to SLM and Mr. Lord. The remaining

allegations of SAC ¶ 34 contain no factual statements to which a response is required, and so these allegations are denied.

35.     Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action, but admit that plaintiffs purport to bring a securities class action on behalf of themselves and a class of all persons who purchased the publicly traded securities of SLM between January 18, 2007, and January 23, 2008.  Defendants deny the remaining allegations in SAC ¶ 35.

36.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 36. Defendants admit that throughout the Class Period, SLM's common stock was traded on the New York Stock Exchange.  Defendants are informed and believe, that as of the time of the filing of the SAC, the Company had more than 466 million shares of stock outstanding, and that those shares were owned by hundreds of persons.  To the extent that SAC ¶ 36 contains any remaining factual allegations, such allegations are denied.

37.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 37. To the extent that SAC ¶ 37 contains any factual allegations, such allegations are denied.

38.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 38. To the extent that SAC ¶ 38 contains any factual allegations, such allegations are denied.

39.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 39. To the extent that SAC ¶ 39 contains any factual allegations, such allegations are denied.

40.     Defendants are not required to respond to legal conclusions set forth in SAC ¶ 40. To the extent that SAC ¶ 40 contains any factual allegations, such allegations are denied.

41.     Defendants deny that SLM makes student loans.  Defendants admit that during the Class Period, as that term is defined in the SAC, SLM was the parent company of certain entities that participated in FFELP and originated and serviced PELs.  Defendants further admit that, as of the filing of the SAC, SLM's subsidiaries offered consolidation loans for the FFELP and PEL markets.  Defendants admit that PELs include loans for the aggregate value of the PELs provided through SLM's subsidiaries at the end of 2006 are specified in the Company's 2006 SEC Form 10-K, and Defendants refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations of SAC ¶ 41.

42.     Defendants admit that, when the SAC was filed, FFELP loans were originated under governing federal law, as that law has been periodically amended by subsequent legislation. Details on the average interest rate on FFELP loans in 2006 and the student loan spread are specified in the Company's 2006 SEC Form 10-K, and Defendants refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations of SAC ¶ 42.

43.     Defendants admit that, when the SAC was filed, PELs were neither guaranteed nor reinsured by the federal government.  Defendants further admit that PELs include loans for higher education, undergraduate and graduate degrees, and for career training and professional/vocational training programs.  Details on the average interest rate on PELs in 2006 and the student loan spread for PELs are specified in the Company's 2006 SEC Form 10-K, and Defendants refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations of SAC ¶ 43.

44.     Defendants deny that SLM makes student loans.  Defendants admit that SLM is the parent company of certain entities that participated in FFELP and originated and serviced PELs.  These entities marketed the FFELP loans and PELs through a variety of means which are specified in the Company's public filings, including the 2006 SEC Form 10-K.  Defendants refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations of SAC ¶ 44.

45.     Defendants admit that, when the SAC was filed, SLM Financial was a wholly-owned subsidiary of SLM that offered PELs to borrowers enrolled in variety of educational programs, including those offered by private, for-profit, and correspondence schools. Defendants deny the remaining allegations in SAC ¶ 45.

46.     Defendants deny that SLM makes student loans.  Defendants admit that during the Class Period, as that term is defined in the SAC, SLM was the parent company of certain entities that originated and serviced PELs, including those loans that are characterized as Tuition Answer loans.  Details on the aggregate value of the Tuition Answer loans outstanding at the end of 2006 are specified in the Company's 2006 SEC Form 10-K, and Defendants refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 46.

47.     Defendants admit that the Higher Education Reconciliation Act of 2005 was signed by then-President Bush in 2006 and become effective later that year.  Defendants further admit that SLM filed a 2006 SEC Form 10-K that contained a discussion of this law, and Defendants refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 47.

48.     Defendants admit that Mr. Lord spoke during SLM's January 23, 2008 conference call, and Defendants refer to the transcript of that conference call for a statement of its contents. Details on the aggregate value of the PEL portfolio are specified in the Company's 2006 and 2007 SEC Form 10-Ks, as well as it quarterly filings with the SEC. Defendants refer to those filings for a complete and accurate statement of their contents. Defendants deny the remaining allegations in SAC ¶ 48.

49.     Defendants deny the allegations in the text of SAC ¶ 49. Defendants are without knowledge or information as to the truth of the allegations in footnote 2 of SAC ¶ 49, and on that basis those allegations are denied.

50.     Defendants deny the characterization of any statements by SLM executives as "admissions." Defendants admit that after the Class Period, as that term is defined in the SAC, SLM enhanced its underwriting criteria and exited particular market segments as detailed in its 2007 SEC Form 10-Ks, as well as certain quarterly filings with the SEC, press releases, and conference calls. Defendants refer to those documents for a complete and accurate statement of their contents. Defendants deny the remaining allegations in SAC ¶ 50.

51.     Defendants deny the allegations in SAC ¶ 51.

52.     Defendants admit that in 2006, representatives of the Company had various exploratory discussions with a group including J.C. Flowers (the "Flowers group") concerning a potential transaction involving the Company. Defendants also admit that these discussions continued and evolved throughout 2006 and into 2007. Defendants deny the remaining allegations in SAC ¶ 52.

53.     Defendants admit that on April 15, 2007, SLM executed a merger agreement with the Flowers group.  Defendants refer to this agreement and other transactional documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 53.

54.     Defendants admit that on April 16, 2007, SLM issued a press release regarding the transaction.  Defendants refer to this document for a complete and accurate statement of its contents.  Defendants admit that SLM's stock closed at $40.75 per share on April 12, 2007, $46.76 per share on April 13, 2007, and $55.05 on April 16, 2007, respectively.  Defendants deny the remaining allegations in SAC ¶ 54.

55.     Defendants admit the existence of contractual documents memorializing the transaction between SLM and the Flowers group, and  refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 55.

56.     Defendants admit that on July 11, 2007, the Company issued a press release regarding the transaction.  Defendants refer to that press release for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 56.

57.      Defendants admit that the Company issued press releases on August 6, 2007, September 20, 2007, September 26, 2007, October 2, 2007, and October 11, 2007.  Defendants refer to these press releases for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 57.

58.     Defendants admit that on October 8, 2007, SLM filed a lawsuit in the Delaware Court of Chancery against the Flowers group.  Defendants refer to the complaint in that action for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 58.

59.     Defendants admit that on December 12, 2007, SLM issued a press release. Defendants refer to this press release for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 59.

60.      Defendants admit that on or about January 28, 2008, SLM dismissed its lawsuit against the Flowers group.  Defendants further admit that on January 28, 2008, SLM issued a press release and refer to this press release for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 60.

61.     Defendants deny the allegations of SAC ¶ 61.

62.     Defendants admit the existence of contractual documents memorializing the transaction between SLM and the Flowers group, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 62.

63.      Defendants admit that if the merger were consummated, Mr. Lord – like other shareholders – would receive compensation for their shares in accordance with the relevant transactional documents.  Defendants refer to those transactional documents for a complete and accurate statement of their contents.  Defendants further admit that on May 25, 2007, the Company filed a Preliminary Proxy Statement in connection with the merger.  Defendants refer

to that Proxy Statement for a complete and accurate statement of its contents.  Defendants deny the remaining allegations of SAC ¶ 63.

64.     Defendants admit that prior to the class period SLM entered into certain equity forward contracts and Defendants refer to the transactional documents memorializing those contracts for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 64.

65.     Defendants admit that prior to the class period SLM entered into certain equity forward contracts which were subsequently amended.  Defendants refer to the transactional documents and amendments memorializing those agreements for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 65.

66.     Defendants admit that prior to the class period SLM entered into certain equity forward contracts which were subsequently amended.  Defendants refer to the transactional documents and amendments memorializing those agreements for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 66.

67.     Defendants deny the allegations in SAC ¶ 67.

68.     Defendants admit that prior to the class period SLM entered into certain equity forward contracts which were subsequently amended.  Defendants refer to the transactional documents and amendments memorializing those agreements for a complete and accurate statement of their contents.  Additionally, Defendants admit that during the Class Period, as that term is defined in the SAC, the Company issued periodic press releases and SEC filings that discussed the equity forward contracts, and refer to those press releases and filings for a

complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 68.

69.     Defendants admit that SLM held a conference call on December 19, 2007, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 69.

70.     Defendants admit that SLM filed a report on SEC Form 8-K, and refer to this filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 70.

71.      Defendants admit that SLM filed several public disclosure documents with the SEC during the Class Period, as that term is defined by the plaintiffs.  Defendants refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 71.

72.     Defendants admit that SLM issued the January 3, 2008 press release referred to in SAC ¶ 72, and refer to that document for a complete and accurate statement of its contents.  Defendants further admit that on January 23, 2008, SLM held the investor conference call referred to in SAC ¶ 72 and refer to that transcript for a statement of its contents.  Defendants admit the allegations in the fourth and sixth sentences of SAC ¶ 72.  Defendants deny the remaining allegations in SAC ¶ 72.

73.     Defendants admit that SLM held a conference call on January 23, 2008, and refer to the  transcript of that call for a statement of its contents.  Defendants also admit the existence of  SLM's 2007 Form 10-K referred to in SAC ¶ 73, and refer to that filing for a complete and

accurate statement of its contents.  Defendants admit that Mr. Lord was referenced in the June 5, 2008, *Wall Street Journal* article referred to in SAC ¶ 73, and refer to that article for a statement of its contents.  Defendants further admit that the Lehman Brothers Financial Services Conference referred to in SAC ¶ 73 was held on September 10, 2008, and refer to that transcript for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 73.

74.     Defendants admit that forbearance allows a PEL borrower, for a processing fee, which is waived under certain circumstances, to make no payments of principal or interest on a loan and the term of the loan is extended by the amount of the forbearance period.  At the end of each forbearance period, interest that the borrower otherwise would have paid is typically capitalized.  Defendants deny the remaining allegations in SAC ¶ 74.

75.     Defendants admit that SLM has made certain public disclosures referred to in SAC ¶ 75, and refer to those disclosures for a complete and accurate statement of their contents.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 75.  To the extent that SAC ¶ 75 contains any factual allegations, such allegations are denied.

76.     Defendants admit that when a borrower ends forbearance and enters repayment, the account is considered current.  Defendants also admit that, for PELS, loans in forbearance accrue interest during the forbearance period.  Defendants deny the remaining allegations of SAC ¶ 76.

77.     Defendants admit that SLM made the filings with the SEC referred to in SAC ¶ 77, and refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations of SAC ¶ 77.

78.     Defendants deny the allegations in SAC ¶ 78.

79.     Defendants admit that SLM held the October 23, 2008 and January 22, 2009 investor conference calls referred to in SAC ¶ 79, and refer to the transcript of those conference calls for a statement of their contents.  Defendants deny the remaining allegations of SAC ¶ 79.

80.     Defendants admit that details on the amount of the Managed Private Education Loan portfolio (held by certain of SLM's subsidiaries and affiliates) in forbearance at year-end 2006, 2007, and 2008 are specified in the Company's SEC Form 10-Ks for years 2006-2008.  Defendants further admit that details on the amount of delinquencies as a percentage of Private Education Loans in repayment at year-end 2006, 2007, and 2008 are specified in the Company's SEC Form 10-Ks for years 2006-2008.  Defendants deny the remaining allegations of SAC ¶ 80.

81.     Defendants deny the allegations of SAC ¶ 81.

82.     Defendants deny the allegations in the first sentence of SAC ¶ 82.  Defendants are without knowledge or information as to the truth of the remaining allegations of SAC ¶ 82, and therefore deny those allegations.

83.     Defendants deny the allegations of SAC ¶ 83.

84.     Defendants deny the allegations of SAC ¶ 84.

85.     Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 85, and therefore deny those allegations.  Defendants deny the allegations in the second sentence of SAC ¶ 85.

86.     Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 86, and therefore deny those allegations.

87.     Defendants deny the allegations of SAC ¶ 87.

88.     Defendants are without knowledge or information as to the truth of the allegations asserted by the Confidential Witnesses in  SAC ¶ 88, and therefore deny those allegations. Additionally, SLM denies the allegations in the second and third sentences.

89.     Defendants admit that any grant of forbearance required a processing fee of $50 per loan, not to exceed $150, that was not always required to be paid at the time of the grant of forbearance.  Defendants further admit that the processing fee associated with forbearance could be waived under certain circumstances.  Defendants are without knowledge or information as to the truth of the statements made by the Confidential witnesses in SAC ¶ 89, and therefore deny those allegations.

90.     Defendants deny the allegations in the first sentence of SAC ¶ 90.  Defendants are without knowledge or information as to the truth of the remaining allegations of SAC ¶ 90, and therefore deny those allegations.

91.     Defendants are without knowledge or information as to the truth of the allegations in the first sentence of SAC ¶ 91, and therefore deny those allegations. Defendants deny the second sentence in SAC ¶ 91.

92.     Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 92, and therefore deny those allegations.

93.     Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 93, and therefore deny those allegations.

94.     Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 94, and therefore deny those allegations.

95.     Defendants deny the allegations in the first, third and last sentence of SAC ¶ 95. For the remaining allegations, Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 95, and therefore deny those allegations.

96.     Defendants admit that SLM made certain filings with the SEC at year end 2006 and in the first and second quarter of 2007, referred to in SAC ¶ 96, and refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 96.

97.     Defendants admit that SLM issued the October 11, 2007 press release referred to in SAC ¶ 97 and refer to that press release for a complete and accurate statement of its contents. Defendants also admit that SLM held the October 11, 2007 conference call referred to in SAC ¶ 97 and refer to that transcript for a statement of its contents.  Defendants further admit that SLM filed a Form 10-Q with the SEC on November 8, 2007, referred to in SAC ¶ 97 and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 97.

98.     Defendants deny the allegations in the first sentence of SAC ¶ 98.  Defendants are without knowledge or information as to the truth of the remaining allegations in SAC ¶ 98, and therefore deny those allegations.

99.     Defendants are without knowledge or information as to the truth of the allegations of SAC ¶ 99, and therefore deny those allegations.

100.     Defendants deny the allegations of SAC ¶ 100.

101.     Defendants admit the existence of GAAP, and refer to those principles for a statement of their contents.  Defendants also admit the SEC has delegated certain rule-making authority pertaining to GAAP for public companies to the Financial Accounting Standards Board ("FASB").  Further, Defendants admit the existence of SEC Regulation S-X referenced in SAC ¶ 101, and refer to that regulation for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 101.

102.     Defendants admit that the American Institute of Certified Public Accountants ("AICPA") has issued industry-specific Audit & Accounting Guides and refer to those guides for a statement of their contents.  Defendants also admit that the AICPA issues Audit Risk Alerts particularized by industry, including financial institutions and refer to those alerts for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 102.

103.     Defendants admit the existence of the Statement of Financial Accounting Standards Nos. 2 and 5 referenced in SAC ¶103, and refer to those documents for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 103.

104.     Defendants admit the existence of the Exchange Act referenced in SAC ¶ 104, and refer to that law for a statement of its contents.  Further, Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 104.  To the extent that SAC ¶ 104 contains any remaining factual allegations, such allegations are denied.

105.     The allegations in SAC ¶ 105 state a legal conclusion to which no response is required.  To the extent that SAC ¶ 105 contains any factual allegations, such allegations are denied.

106.     Defendants deny the allegations of SAC ¶ 106.

107.     Defendants admit the existence of SFAS No. 5, Accounting for Contingencies, referenced in SAC ¶ 107, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 107.

108.     Defendants admit the existence of SEC Staff Accounting Bulletin No. 102, Selected Loan Loss Allowance Methodology and Documentation Issues referenced in SAC ¶ 108, and refer to that bulletin for a statement of its content.  Defendants deny the remaining allegations in SAC ¶ 108.

109.     Defendants admit the existence of the Federal Financial Institutions Examination Council's Policy Statement on Allowance for Loan and Lease Losses Methodologies and Documentation for Banks and Savings Institutions referenced in SAC ¶ 109, and refer to that bulletin for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 109.

110.     The allegations in SAC ¶ 110 state a legal conclusion to which no response is required.  To the extent that SAC ¶ 110 contains any factual allegations, such allegations are denied.

111.     Defendants admit that SLM made certain filings with the SEC during the Class Period including a Form 10-K on March 1, 2007, and Form 10-Qs on May 10, 2007, August 7, 2007, and November 8, 2007, respectively, referred to in SAC ¶ 111, and refer to those filings

for a complete and accurate statement of their contents. Defendants deny the remaining allegations of SAC ¶ 111.

112.     Defendants deny the allegations of SAC ¶ 112.

113.     Defendants admit that during the Class Period, as that term is defined in the SAC, SLM used a PEL loan loss allowance methodology which is described in its periodic filings with the SEC, and refer to those filings for a complete and accurate statement of their contents. Defendants deny the remaining allegations of SAC ¶ 113.

114.     Defendants admit that the Department of Education publishes a cohort default rate for FFELP loans referred to in SAC ¶ 114, and refer to that publication for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 114.

115.     Defendants admit that the Department of Education publishes a cohort default rate for FFELP loans referred to in SAC ¶ 115, and refer to that publication for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 115.

116.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 116, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations of SAC ¶ 116.

117.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 117, and refer to that filing for a complete and accurate statement of its contents. Defendants further admit that the Department of Education publishes a cohort default rate for FFELP loans referred to in SAC ¶ 117, and refer to that publication for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 117.

118.    Defendants deny the allegations in SAC ¶ 118.

119.    Defendants admit that in December 2003, the Office of the Inspector General of the United States Department of Education issued a Final Audit Report entitled "Audit to Determine if Cohort Default Rates Provide Sufficient Information on Defaults in the Title IV Loan Programs," referred to in SAC ¶ 119, and refer to that publication for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 119.

120.    Defendants admit that in June 2006, the National Center for Education Statistics of the United States Department of Education released a report entitled "Dealing with Debt: 1992-93 Bachelor's Degree Recipients 10 Years Later," referred to in SAC ¶ 120, and refer to that publication for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 120.

121.    Defendants admit that the Department of Education published budget lifetime default rates and refer to those publications for a statement of their contents.  Defendants further admit that the Department of Education also publishes cumulative lifetime default rates and refer to those publications for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 121.

122.    Defendants admit that that details on the amount of SLM's allowance as a percentage of ending total PEL balance for fiscal year 2006 are specified in the Company's 2006 SEC Form 10-K.  Defendants further admit that on March 26, 2009, SLM's subsidiary Sallie Mae, Inc.  issued a research paper entitled "Sallie Mae Helps Students Avoid Negative Impact of Default: Comparison of Cohort Default Rates Shows Sallie Mae Borrowers Average 30 Percent Fewer Defaults Than Direct Loan Borrowers," referred to in SAC ¶ 122, and refer to that

publication for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 122.

123.    Defendants admit that the allowance for PEL losses has increased after the end of the Class Period, as that term is defined in the SAC.  Defendants deny the remaining allegations in SAC ¶ 123.

124.    Defendants admit that SLM made certain representations regarding underwriting in its filings with the SEC including in SLM's Form 10-K filed March 1, 2007, and Form 10-Q filed May 10, 2007, referred to in SAC ¶ 124 and refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 124.

125.    Defendants admit the existence of SFAS No. 5, Accounting for Contingencies, referenced in SAC ¶ 125, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 125.

126.    Defendants admit the existence of SAB 102 referenced in SAC ¶ 126, and refer to that standard for a statement of its contents.  Defendants further admit that SLM held the January 23, 2008 conference call referred to in SAC ¶ 126, and refer to that transcript for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 126.

127.    Defendants admit the existence of SFAS No. 5 and SAB 102 referenced in SAC ¶ 127, and refer to those standards for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 127.

128.    Defendants deny the allegations in SAC ¶ 128.

129.     Defendants admit the existence of SFAS No. 5, Accounting for Contingencies, referenced in SAC ¶ 129, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 129.

130.     Defendants admit the existence of SAB 102 referenced in SAC ¶ 130, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 130.

131.     Defendants admit the existence of certain disclosures referred to in SAC ¶ 131, and refer to those disclosures for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 131.

132.     Defendants admit the existence of data published by the National Center for Education Statistics referred to in SAC ¶ 132, and refer to that publication for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 132.

133.     Defendants admit the existence of a report in the June 2005 publication of National Consumer Law Center entitled "Making the Numbers Count: Why Proprietary School Performance Data Doesn't Add Up And What Can Be Done About It," referred to in SAC ¶ 133, and refer to that report for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 133.

134.     Defendants admit the existence of an article published on December 22, 2004, by Robin McMillion entitled "Student Loan Default Literature Review," referred to in SAC ¶ 134, and refer to that report for a statement of its contents.  Defendants also admit the existence of a 1998 article by J. Fredericks Volkwein, et al. published in the *Journal of Higher Education*

entitled "Factors Associated with Student Loan Default Among Different Racial and Ethnic Groups," referred to in SAC ¶ 134, and refer to that report for a statement of its contents. Defendants further admit the existence of an article publish in 2002 by Jennie H. Woo in the *NASFAA Journal of Student Financial Aid* entitled "Factors Affecting the Probability of Default: Student Loans In California," referred to in SAC ¶ 134, and refer to that report for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 134.

135.    Defendants admit that details on the amount of the allowance for PEL losses, on a managed basis, for year end 2006 and 2007are specified in the Company's SEC Form 10-Ks for years 2006-2007. Defendants admit that on January 23, 2008, SLM held the conference call referred to in SAC ¶ 135 and refer to that transcript for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 135.

136.    Defendants deny the allegations in SAC ¶ 136.

137.    Defendants deny the allegations in SAC ¶ 137.

138.    Defendants admit the existence of SAB 102 referenced in SAC ¶ 138, and refer to that standard for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 138.

139.    Defendants deny the allegations in SAC ¶ 139.

140.    Defendants deny the allegations in SAC ¶ 140.

141.    Defendants admit the existence of SLM's 2006 10-K referred to in SAC ¶ 141, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 141.

142.    Defendants admit the existence of the financial statements and footnote disclosures referred to in SAC ¶ 142, and refer to those disclosures for a complete and accurate statement of their contents.  Defendants also admit that SLM held the conferences and conference calls referred to in SAC ¶ 142, and refer to transcripts of those events for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 142.

143.    Defendants admit the existence of financial statements filed by SLM during the class period referred to in SAC ¶ 143, and refer to the disclosures in those financial statements for a complete and accurate statement of their contents.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 143.  To the extent that SAC ¶ 143 contains any factual allegations, such allegations are denied.

144.    Defendants admit the existence of the financial statements and footnote disclosures filed by SLM during the class period referred to in SAC ¶ 144, and refer to those disclosures for a complete and accurate statement of their contents.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 144.  To the extent that SAC ¶ 144 contains any factual allegations, such allegations are denied.

145.    Defendants admit that on January 22, 2009, SLM held a conference call in which Mr. Lord participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants admit that SLM made periodic filings with the SEC which disclosed the

rates of forbearance and delinquency, and refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 145.

146.    Defendants deny the allegations in SAC ¶ 146.

147.    Defendants deny the allegations in SAC ¶  147.

148.    Defendants admit the existence of FASB Statement of Concepts No. 1 referenced in SAC ¶ 148, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 148.

149.    Defendants admit the existence of FASB Statement of Concepts No. 1 referenced in SAC ¶ 149, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 149.

150.    Defendants admit the existence of FASB Statement of Concepts No. 1 referenced in SAC ¶ 150, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 150.

151.    Defendants admit the existence of FASB Statement of Concepts No. 2 referenced in SAC ¶ 151, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 151.

152.    Defendants admit the existence of FASB Statement of Concepts No. 2 referenced in SAC ¶ 152, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 152.

153.     Defendants admit the existence of SFAS No. 5 referenced in SAC ¶ 153, and refer to that standard for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 153.

154.     Defendants admit the existence of APB Opinion No. 22, Disclosure of Accounting Policies, referenced in SAC ¶ 154, and refer to that opinion for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 154.

155.     Defendants admit the existence of APB Opinion No. 22, Disclosure of Accounting Policies, referenced in SAC ¶ 155, and refer to that opinion for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 155.

156.     Defendants admit the existence of APB Opinion No. 22, Disclosure of Accounting Policies, referenced in SAC ¶ 156, and refer to that opinion for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 156.

157.     Defendants admit the existence of SLM's 2007 10-K referred to in SAC ¶ 157, and refer to that filing for a complete and accurate statement of its contents.  Defendants also admit the existence of an AICPA Audit and Accounting Guide entitled "Depository and Lending Institutions: Banks and Savings Institutions, Credit Unions, Finance Companies, and Mortgage Companies," referred to in SAC ¶ 157, and refer to that publication for a statement of its contents.  Moreover, defendants admit the existence of a February 2005 publication by AICPA entitled "Bank, Credit Union, and Other Depository and Lending Institution Industry Developments – 2004/05," referred to in SAC ¶ 157, and refer to that publication for a statement of its content.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 157.  Defendants deny the remaining allegations in SAC ¶ 157.

158.     Defendants admit the existence of Statement of Financial Accounting Standards No. 107, Disclosure about Fair Value of Financial Instruments referenced in SAC ¶ 158, and refer to that standard for a statement of its contents.  Defendants further admit that on January 23, 2008, SLM held a conference call in which Mr. Lord, Mr. Remondi, Mr. Terracciano and Mr. McGarry participated, and refer to that transcript for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 158.

159.     Defendants admit the existence of AICPA Statement of Position No. 94-6, Disclosure of Certain Risks and Uncertainties, referenced in SAC ¶ 159, and refer to that statement of position for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 159.

160.     Defendants admit the existence of FASB Staff Position 94-6-1, Terms of Loan Products That May Give Rise to a Concentration of Credit Risk, referenced in SAC ¶ 160, and refer to that staff position for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 160.

161.     Defendants admit the existence of Accounting Principles Board Opinion No. 28, Interim Financial Reporting referenced in SAC ¶ 161, and refer to that principle for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 161.

162.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 162.  To the extent that SAC ¶ 162 contains any factual allegations, such allegations are denied.

163.     Defendants deny the allegations in SAC ¶ 163.

164.     Defendants admit the existence of Regulation S-K referenced in SAC ¶ 164, and refer to that regulation for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 164.

165.     Defendants admit the existence of Securities Act Release Nos. 33-8182,  34-47264 and 33-6711 referenced in SAC ¶ 165, and refer to those releases for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 165.

166.     Defendants admit the existence of the May 18, 1989 Interpretive Release No. 34-26831 referenced in SAC ¶ 166, and refer to that release for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 166.

167.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 167.  To the extent that SAC ¶ 167 contains any factual allegations, such allegations are denied.

168.     Defendants admit the existence of SLM's 2007 10-K referred to in SAC ¶ 168, and refer to that filing for a complete and accurate statement of its contents.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 168.  To the extent that SAC ¶ 168 contains any factual allegations, except as expressly admitted, such allegations are denied.

169.     Defendants admit the existence of SLM's 2006 10-K, quarterly reports on Form 10-Q for the first three quarters of 2007, and SOX certifications signed by Mr. Andrews, referred to in SAC ¶ 169, and refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 169.

170.     Defendants deny the allegations in SAC  ¶  170.

171.    Defendants admit the existence of the SEC Release No. 33-8238 referenced in SAC ¶ 171, and refer to that release for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 171.

172.    Defendants admit the existence of the Section 404 of the Sarbanes-Oxley Act of 2002 referenced in SAC ¶ 172, and refer to it for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 172.

173.    Defendants admit the existence of the SEC Release No. 33-8238 and Public Company Accounting Oversight Board (PCAOB) Auditing Standards No. 2 referenced in SAC ¶ 173, and refer to those releases and standards for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 173.

174.    Defendants deny the allegations in SAC ¶ 174.

175.    Defendants deny the allegation in SAC ¶ 175 that SLM lacked internal controls. Additionally, Defendants are without knowledge or information as to the truth of the remaining allegations of SAC ¶ 175, and therefore deny those allegations.

176.    Defendants are without knowledge or information as to the truth of the allegations in the first sentence of SAC ¶ 176, and therefore deny those allegations.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 176.  To the extent that SAC ¶ 176 contains any additional factual allegations, such allegations are denied.

177.    Defendants deny the allegations in SAC ¶ 177.

178.    Defendants deny the allegations in SAC ¶ 178.

179.    Defendants deny the allegations in SAC ¶ 179.

180.    Defendants are without knowledge or information as to the truth of the allegations in SAC ¶ 180, and therefore deny those allegations.

181.    Defendants admit the existence of SLM's 2007 10-K referred to in SAC ¶ 181, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 181.

182.    Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 182.  To the extent that SAC ¶ 182 contains any factual allegations, such allegations are denied.

183.    To the extent SAC ¶ 183 purports to state a legal conclusion, no response is required.  To the extent a response is required, Defendants deny the allegations of SAC ¶ 183.

184.    To the extent SAC ¶ 184 purports to state a legal conclusion, no response is required.  To the extent a response is required, Defendants deny the allegations of SAC ¶ 184.

185.    To the extent SAC ¶ 185 purports to state a legal conclusion, no response is required.  To the extent a response is required, Defendants deny the allegations of SAC ¶ 185.

186.    Defendants admit the existence of SLM's 2006 Form 10-K and that SLM held conference calls on October 11, 2007, and January 23, 2008, identified in SAC ¶ 186, and refer to those documents and/or transcripts for statements of their contents.  To the extent SAC ¶ 186 purports to state a legal conclusion, no response is required.  To the extent that SAC ¶ 186 contains any factual allegations, such allegations are denied.

187.     Defendants admit the existence of SLM's 2006 Form 10-K referred to SAC ¶ 187, and refer to it for a complete and accurate statement of its contents.  Defendants admit that details on SLM's reported Core Earnings are specified in its 2005, 2006, and 2007 Form 10-Ks and refer to those filings for a complete and accurate statement of their contents.  Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 187.  To the extent that SAC ¶ 187 contains any other factual allegations, such allegations are denied.

188.     Defendants admit that while serving as an officer of SLM, Mr. Lord monitored aspects of the company, including at times the PEL business.  To the extent SAC ¶ 188 purports to state a legal conclusion, no response is required.  Defendants are without knowledge or information as to the truth of the statements made by CW 13 and CW 15, and therefore deny those allegations.  To the extent that SAC ¶ 188 contains any other factual allegations, such allegations are denied.

189.     Defendants deny the allegations in the first sentence of SAC ¶ 189.  Further, Defendants are without knowledge or information as to the truth of the statements made by CW 4 and CW 16, and therefore deny those allegations.  To the extent that SAC ¶ 189 contains any other factual allegations, such allegations are denied.

190.     Defendants deny the allegations in SAC ¶ 190.

191.     Defendants admit that there was a December 19, 2007 conference call and a June 5, 2008 article pertaining to Mr. Lord published in the *Wall Street Journal*, and refer to them for statements of their contents.  Defendants deny the remaining allegations in SAC ¶ 191.

192.     Defendants admit that investor conference calls referenced in SAC ¶ 192 were held on January 18, 2007, and October 11, 2007, and refer to the transcripts of those calls for statements of their contents.  However, Defendants deny that Mr. Andrews made the purportedly quoted statement in the October 11, 2007 conference call.

193.     Defendants deny the allegations of SAC ¶ 193.

194.     Defendants admit that Mr. Andrews was CFO from the beginning of the class period until December 2007, and in that role signed SLM's 2006 10-K and first quarter 2007 10-Q, as well as the SOX certifications accompanying the 2006 10-K and the 2007 10-Q forms for the first three quarters.  Defendants also admit that Mr. Andrews signed SLM's 8-Ks announcing SLM's fourth quarter and year-end 2006 results and first quarter 2007 results, and participated in conference calls regarding those releases.  Defendants deny the remaining allegations in SAC ¶ 194.

195.     Defendants admit that Mr. Lord signed SLM's 2006 10-K and participated in conference calls regarding SLM.  Defendants deny the remaining allegations in SAC ¶ 195.

196.     Defendants deny the allegations in SAC ¶ 196.

197.     Defendants deny the allegations in SAC ¶ 197.

198.     Defendants admit that on April 16, 2007, SLM issued a press release referenced in SAC ¶ 198, and refer to that release for a complete and accurate statement of its contents.  Defendants further admit that SLM's stock closed at $40.75 per share on April 12, 2007, and $46.76 per share on April 13, 2007.  Defendants deny the remaining allegations in SAC ¶ 198.

199.    Defendants admit that on May 25, 2007, SLM filed its Preliminary Proxy Statement related to the merger, and refer to it for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 199.

200.    Defendants admit that on May 25, 2007, SLM filed its Preliminary Proxy Statement related to the merger, and refer to it for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 200.

201.    Defendants admit that Mr. Andrews and Defendant Lord filed Form 4s with the SEC, and refer to those filings for a complete and accurate statement of their contents. Additionally, Defendants admit details on the amounts and conditions associated with stock options granted to Mr. Lord by SLM's Board of Directors are specified in SLM's SEC Form 10-K and Proxy Statements, and refer to those filings for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶201.

202.    Defendants admit that in April 2007, SLM and the Flowers group entered into a transaction memorialized in written agreements, and refer to those agreements for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 202.

203.    Defendants deny the allegations in the first sentence of SAC ¶ 203.  Defendants admit that on December 19, 2007, SLM held a conference call in which Mr. Lord participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 203.

204.    Defendants admit that SLM had outstanding equity forward contracts which were memorialized in written agreements and refer to those materials for a statement of their contents. Defendants deny the remaining allegations in SAC ¶ 204.

205.    Defendants admit that SLM had outstanding equity forward contracts which were memorialized in written agreements and refer to those materials for a statement of their contents. Defendants further admit that those contracts were subsequently amended.  Defednants deny the remaining allegations in SAC ¶ 205.

206.    To the extent SAC ¶ 206 purports to state a legal conclusion, no response is required.  To the extent a response is required, Defendants deny the allegations of SAC ¶ 206.

207.    Defendants deny the allegations in SAC ¶ 207.

208.    Defendants admit that the equity forward contracts were amended in December 2007 and refer to those amendments for a statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 208.

209.    Defendants admit the existence of SLM's January 3, 2008 Form 8-K referred to in SAC ¶ 209, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 209.

210.    To the extent SAC ¶ 210 purports to state a legal conclusion, no response is required.  To the extent a response is required, Defendants deny the allegations of SAC ¶ 210.

211.    Defendants admit that on February 1 and 2, 2007, Mr. Lord sold 400,000 shares of SLM stock.  Defendants further admit that on February 5, 2007, the Presidential Budget was submitted to Congress.  Defendants deny the remaining allegations in SAC ¶ 211.

212.    Defendants admit the existence of a December 5, 2006 document titled "Federal Government Relations Strategy Discussion," and refer to that document for a statement of its contents.  Defendants further admit that Reuters published the article referenced in SAC ¶ 212, and refer to the article for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 212.

213.    Defendants admit that on August 3, 2007, SLM issued a press release referred to in SAC ¶ 213, and refer to the release for a complete and accurate statement of its contents. Defendants further admit that on August 8, 2007, Defendant Lord exercised 1,663,448 stock options at prices ranging from $18.3333 to $26.6166, and sold 1,139,510 shares of SLM stock at $49.33 per share to pay for the exercise.  Defendants deny the remaining allegations in SAC ¶ 213.

214.    Defendants admit that the *New York Post* published the article referenced in SAC ¶ 214, and refer to the article for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 214.

215.    Defendants admit that, as described in SLM's Form 10-Q for the third quarter 2007, on October 2, 2007, the Flowers Group asserted a material adverse effect had occurred, and refer to the 10-Q for a complete and accurate statement of its contents.  Defendants further admit that Mr. Lord exercised certain options eight weeks prior to October 2, 2007.  Defendants deny the remaining allegations in SAC ¶ 215.

216.    Defendants admit that on December 14, 2007, Defendant Lord sold 1,265,401 shares of SLM stock disclosed in Forms 4 filed with the SEC, and refer to those filings for a complete and accurate statement of their contents. Defendants further admit that on December 19, 2007, SLM held a conference call in which Mr. Lord participated and refer to that transcript for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 216.

217.    Defendants admit that on December 19, 2007, SLM held a conference call in which Mr. Lord participated and refer to a transcript of that conference call for a statement of its contents.  Defendants further admit that the *Washington Post* published the article referenced in SAC ¶ 217, and refer to the article for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 217.

218.    Defendants admit that on January 18, 2007, SLM released a Form 8-K and related press release signed by Mr. Andrews referred to in SAC ¶ 218, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 218.

219.    Defendants admit that on January 18, 2007, SLM released a Form 8-K and related press release referred to in SAC ¶ 219, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 219.

220.    Defendants deny the allegations in SAC ¶ 220.

221.    Defendants admit that on January 18, 2007, SLM filed a Form 8-K and related press release referred to in SAC ¶ 221, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 221.

222.     Defendants deny the allegations in SAC ¶ 222.

223.     Defendants admit that on January 18, 2007, SLM conducted an investor conference call in which Mr. Andrews, Mr. McGarry and Mr. Fitzpatrick participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 223.

224.     Defendants admit that on January 18, 2007, SLM conducted an investor conference call in which Mr. Andrews, Mr. McGarry and Mr. Fitzpatrick participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 224.

225.     Defendants deny the allegations in SAC ¶ 225.

226.     Defendants admit that on January 18, 2007, SLM conducted an investor conference call in which Mr. Andrews, Mr. McGarry and Mr. Fitzpatrick participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 226.

227.     Defendants deny the allegations in SAC ¶ 227.

228.     Defendants admit that on January 18, 2007, SLM conducted an investor conference call in which Mr. Andrews, Mr. McGarry and Mr. Fitzpatrick participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 228.

229.     Defendants deny the allegations in SAC ¶ 229.

230.     Defendants admit the allegations in SAC ¶ 230.

231.     Defendants admit that Mr. Andrews signed the SOX certifications accompanying SLM's 2006 Form 10-K, but deny the remaining allegations in SAC ¶ 231.

232.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 232, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 232.

233.     Defendants deny the allegations in SAC ¶ 233.

234.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 234, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 234.

235.     Defendants deny the allegations in SAC ¶ 235.

236.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 236, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 236.

237.     Defendants deny the allegations in SAC ¶ 237.

238.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 238, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 238.

239.     Defendants deny the allegations in SAC ¶ 239.

240.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 240, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 240.

241.     Defendants deny the allegations in SAC ¶ 241.

242.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 242, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 242.

243.     Defendants deny the allegations in SAC ¶ 243**.**

244.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 244, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 244.

245.     Defendants deny the allegations in SAC ¶ 245.

246.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 246, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 246.

247.     Defendants deny the allegations in SAC ¶ 247.

248.     Defendants admit the existence of SLM's 2006 Form 10-K referred to in SAC ¶ 248, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 248.

249.     Defendants deny the allegations in SAC ¶ 249.

250.     Defendants admit the allegations in SAC ¶ 250.

251.     Defendants admit the existence of the April 24, 2007 press release, referred to in SAC ¶ 251, and refer to that release for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 251.

252.     Defendants deny the allegations in SAC ¶ 252.

253.     Defendants admit the existence of the April 24, 2007 press release, referred to in SAC ¶ 253, and refer to that release for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 253.

254.     Defendants deny the allegations in SAC ¶ 254.

255.     Defendants admit the allegations in SAC ¶ 255.

256.     Defendants admit that Mr. Andrews signed the SOX certifications accompanying SLM's first quarter 2007 Form 10-Q, but deny the remaining allegations in SAC ¶ 256.

257.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 257, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 257.

258.     Defendants deny the allegations in SAC ¶ 258.

259.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 259, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 259.

260.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 260, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 260.

261.     Defendants deny the allegations in SAC ¶ 261.

262.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 262, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 262.

263.     Defendants deny the allegations in SAC ¶ 263.

264.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 264, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 264.

265.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 265, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 265.

266.     Defendants admit the existence of SLM's first quarter 2007 Form 10-Q referred to in SAC ¶ 266, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 266.

267.     Defendants deny the allegations in SAC ¶ 267.

268.     Defendants admit the allegations in SAC ¶ 268.

269.     Defendants admit the existence of SLM's July 17, 2007 Form 8-K and associated press release, referred to in SAC ¶ 269, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 269.

270.     Defendants deny the allegations in SAC ¶ 270.

271.     Defendants admit the existence of SLM's July 17, 2007 Form 8-K and associated press release, referred to in SAC ¶ 271, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 271.

272.     Defendants deny the allegations in SAC ¶ 272.

273.     Defendants admit the allegations in SAC ¶ 273.

274.     Defendants admit that Mr. Andrews signed the SOX certifications accompanying SLM's second quarter 2007 Form 10-Q, but deny the remaining allegations in SAC ¶ 274.

275.     Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 275, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 275.

276.     Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 276, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 276.

277.     Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 277, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 277.

278.    Defendants deny the allegations in SAC ¶ 278.

279.    Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 279, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 279.

280.    Defendants deny the allegations in SAC ¶ 280.

281.    Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 281, and refer to that filing for a complete and accurate statement of its contents.   Defendants deny the remaining allegations in SAC ¶ 281.

282.    Defendants deny the allegations in SAC ¶ 282.

283.    Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 283, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 283.

284.    Defendants admit the existence of SLM's second quarter 2007 Form 10-Q referred to in SAC ¶ 284, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 284.

285.    Defendants deny the allegations in SAC ¶ 285.

286.    Defendants admit the allegations in SAC ¶ 286.

287.    Defendants admit the existence of SLM's October 11, 2007 Form 8-K and associated press release referred to in SAC ¶ 287, and refer to those documents for a complete

and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 287.

288.    Defendants deny the allegations in SAC ¶ 288.

289.    Defendants admit the existence of SLM's October 11, 2007 Form 8-K and associated press release referred to in SAC ¶ 289, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 289.

290.    Defendants deny the allegations in SAC ¶ 290.

291.    Defendants admit the existence of SLM's October 11, 2007 Form 8-K and associated press release referred to in SAC ¶ 291, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 291.

292.    Defendants deny the allegations in SAC ¶ 292.

293.    Defendants admit the existence of SLM's October 11, 2007 Form 8-K and associated press release referred to in SAC ¶ 293, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 293.

294.    Defendants deny the allegations of SAC ¶ 294.

295.    Defendants admit that on October 11, 2007, SLM held a conference call in which Mr. Lord and Mr. Andrews participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 295.

296.    Defendants admit that on October 11, 2007, SLM held a conference call and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 296.

297.    Defendants deny the allegations in SAC ¶ 297.

298.    Defendants admit that on October 11, 2007, SLM filed a Form 8-K attaching a presentation used in the October 11, 2007 conference call referenced in SAC ¶ 298, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 298.

299.    Defendants deny the allegations in SAC ¶ 299.

300.    Defendants admit that on October 11, 2007, SLM held a conference call in which Mr. Lord and Mr. Andrews participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 300.

301.    Defendants deny the allegations in SAC ¶ 301.

302.    Defendants admit that on October 11, 2007, SLM held a conference call in which Mr. Lord and Mr. Andrews participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 302.

303.    Defendants deny the allegations in SAC ¶ 303.

304.     Defendants admit the allegations in SAC ¶ 304.

305.     Defendants admit that Mr. Andrews signed the SOX certifications accompanying SLM's third quarter 2007 Form 10-Q, but deny the remaining allegations in SAC ¶ 305.

306.     Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 306, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 306.

307.     Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 307, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 307.

308.     Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 308, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 308.

309.     Defendants deny the allegations in SAC ¶ 309.

310.     Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 310, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 310.

311.     Defendants deny the allegations in SAC ¶ 311.

312.     Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 312, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 312.

313.    Defendants deny the allegations in SAC ¶ 313.

314.    Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 314, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 314.

315.    Defendants admit the existence of SLM's third quarter 2007 Form 10-Q referred to in SAC ¶ 315, and refer to that filing for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 315.

316.    Defendants deny the allegations in SAC ¶ 316.

317.    Defendants admit that on December 12, 2007, SLM issued a press release referred to in SAC ¶ 317, and refer to that press release for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 317.

318.    Defendants deny the allegations in SAC ¶ 318.

319.    Defendants admit that on December 19, 2007, SLM held a conference call in which Mr. Lord and Mr. McGarry participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 319.

320.    Defendants admit that on December 19, 2007, SLM held a conference call and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 320.

321.    Defendants admit that on December 19, 2007, SLM held a conference call and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 321.

322.    Defendants admit that on December 19, 2007, SLM held a conference call and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 322.

323.    Defendants admit that on December 19, 2007, SLM held a conference call in which Mr. Lord participated and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 323.

324.    Defendants admit that on December 19, 2007, SLM stock opened at $28.85 per share and closed at $22.89 per share with 58.5 million shares trading.  The previous day, 12.37 million shares were traded, and the following day 58.46 million shares were traded.  Defendants deny the remaining allegations in SAC ¶ 324.

325.    Defendants admit that the *Wall Street Journal* published an article referenced in SAC ¶ 325, and refer to the article for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 325.

326.    Defendants admit that on January 3, 2008, SLM filed a Form 8-K and associated press release referred to in SAC ¶ 326, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 326.

327.     Defendants admit that on January 3, 2008, SLM filed a Form 8-K and associated press release referred to in SAC ¶ 327, and refer to those documents for a complete and accurate statement of their contents.  Defendants deny the remaining allegations in SAC ¶ 327.

328.     Defendants admit that on January 3, 2008, SLM stock closed at $19.16 per share. Defendants further admit that on January 4, 2008, SLM stock closed at $16.67 per share with over 46 million shares trading.  Defendants deny the remaining allegations in SAC ¶ 328.

329.     Defendants admit that on January 22, 2008, Corinthian Colleges, Inc. filed a Form 8-K referred to in SAC ¶ 329.  Defendants deny the remaining allegations in SAC ¶ 329.

330.     Defendants are without knowledge or information as to statements made by Career Education Corp., Lincoln Educational Services, Universal Technical Institute, DeVry, ITT Education Services, and University of Phoenix referred to in SAC ¶ 330.  To the extent a response is required, Defendants deny the allegations of SAC ¶ 330.

331.     Defendants admit that on January 23, 2008, SLM issued a press release referred to in SAC ¶ 331, and refer to that release for a complete and accurate statement of its contents. Defendants deny the remaining allegations in SAC ¶ 331.

332.     Defendants admit that on January 23, 2008, SLM conducted an investor conference call in which Mr. Lord, Mr. Remondi, Mr. Terracciano and Mr. McGarry participated, and refer to the transcript of that conference call for a statement of its contents. Defendants deny the remaining allegations in SAC ¶ 332.

333.     Defendants admit that on January 23, 2008, SLM conducted an investor conference call in which Mr. Lord participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 333.

334.     Defendants admit that on January 23, 2008, SLM conducted an investor conference call in which Mr. Remondi participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 334.

335.     Defendants admit that on January 23, 2008, SLM conducted an investor conference call in which Mr. Remondi participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 335.

336.     Defendants admit that on January 23, 2008, SLM stock closed at $18.69 per share.  Defendants deny the remaining allegations in SAC ¶ 336.

337.     Defendants admit that on February 29, 2008, SLM filed with the SEC its Form 10-K for the year 2007 referred to in SAC ¶ 337, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 337.

338.     Defendants admit that on February 29, 2008, SLM filed with the SEC its Form 10-K for the year 2007 referred to in SAC ¶ 338, and refer to that filing for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 338.

339.     Defendants admit that on April 17, 2008, SLM conducted an investor conference call in which Mr. Lord, Mr. McGarry and Mr. Remondi participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 339.

340.     Defendants admit that the *Wall Street Journal* published an article entitled 'SLM's Headmaster on Lessons Learned' referred to in SAC ¶ 340, and refer to the article for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 340.

341.     Defendants admit that on July 24, 2008, SLM conducted an investor conference call in which Mr. Lord, Mr. McGarry and Mr. Remondi participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 341.

342.     Defendants admit that on September 10, 2008, Mr. Lord participated in the Lehman Brothers Global Finance Services Conference, and refer to the transcript of that conference for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 342.

343.     Defendants admit that on October 23, 2008, SLM conducted an investor conference call in which Mr. Lord, Mr. McGarry and Mr. Remondi participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 343.

344.     Defendants admit that on October 23, 2008, SLM conducted an investor conference call referred to in SAC ¶ 344 in which Mr. Remondi participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 344.

345.     Defendants admit that on January 22, 2009, SLM conducted an investor conference call referred to in SAC ¶ 345 in which Mr. Lord, Mr. McGarry, and Mr. Remondi

participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 345.

346.    Defendants admit that on January 22, 2009, SLM conducted an investor conference call referred to in SAC ¶ 346 in which Mr. Remondi participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 346.

347.    Defendants admit that on April 23, 2009, SLM conducted an investor conference call referred to in SAC ¶ 347 in which Mr. Lord, Mr. McGarry, and Mr. Remondi participated, and refer to the transcript of that call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 347.

348.    Defendants admit that on July 22, 2009, SLM conducted an investor conference call in which Mr. Lord, Mr. McGarry and Mr. Remondi participated, and refer to the transcript of that conference call for a statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 348.

349.    Defendants admit that on July 22, 2009, SLM released a presentation titled "2009 2nd Quarter Review" referred to in SAC ¶ 349, and refer to that document for a complete and accurate statement of its contents.  Defendants deny the remaining allegations in SAC ¶ 349.

350.    Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 350.  To the extent SAC ¶ 350 contains any factual allegations, such allegations are denied.

351.    Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 351.  To the extent SAC ¶ 351 contains any factual allegations, such allegations are denied.

352.     d. Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 352.  To the extent SAC ¶ 352 contains any factual allegations, such allegations are denied.

353.     Defendants deny the allegations in SAC ¶ 353.

354.     Defendants admit that on December 19, 2007, SLM stock opened at a price of $28.85 per share; on January 23, 2008, SLM stock closed at $18.69 per share.  Defendants deny the remaining allegations in SAC ¶ 354.

355.     Defendants admit that the SAC provides dates and discusses movements in SLM stock price, but deny the remaining allegations in SAC ¶ 355.

356.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 356.  To the extent SAC ¶ 356 contains any factual allegations, such allegations are denied.

357.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 357.  To the extent SAC ¶ 357 contains any factual allegations, such allegations are denied.

358.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 358.  To the extent SAC ¶ 358 contains any factual allegations, such allegations are denied.

359.     Defendants incorporate their responses to each and every allegation set forth above as if set forth herein.

360.     Defendants admit that Plaintiffs purport to bring claims pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of Plaintiffs and members of the alleged Class against SLM and Mr. Lord.  Defendants deny the remaining allegations in SAC ¶ 360.

361.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 361. To the extent SAC ¶ 361 contains any factual allegations, such allegations are denied.

362.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 362. To the extent SAC ¶ 362 contains any factual allegations, such allegations are denied.

363.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 363. To the extent SAC ¶ 363 contains any factual allegations, such allegations are denied.

364.     Defendants are without knowledge or information as to the truth of the state of mind of the Plaintiffs or other alleged class members as alleged in SAC ¶ 364, and therefore deny those allegations.  Additionally, Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 364.  To the extent SAC ¶ 364 contains any additional factual allegations not discussed above, such allegations are denied.

365.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 365. To the extent SAC ¶ 365 contains any factual allegations, such allegations are denied.

366.     Defendants incorporate their responses to each and every allegation set forth above as if set forth herein.

367.     Defendants admit that plaintiffs purport to assert this Count pursuant to Section 20(a) of the Exchange Act against Defendant Lord on behalf of Plaintiffs and members of the alleged Class.  Defendants deny the remaining allegations in SAC  ¶  367.

368.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 368. To the extent SAC ¶ 368 contains any factual allegations, such allegations are denied.

369.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 369. To the extent SAC ¶ 369 contains any factual allegations, such allegations are denied.

370.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 370. To the extent SAC ¶ 370 contains any factual allegations, such allegations are denied.

371.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 371. To the extent SAC ¶ 371 contains any factual allegations, such allegations are denied.

372.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 372. To the extent SAC ¶ 372 contains any factual allegations, such allegations are denied.

373.     Defendants are not required to respond to the legal conclusions set forth in SAC ¶ 373. To the extent SAC ¶ 373 contains any factual allegations, such allegations are denied.

## AFFIRMATIVE DEFENSES

For their further and separate affirmative defenses to the SAC, Defendants aver the following.  None of these affirmative defenses operates to shift the burden of proof on any of plaintiffs' alleged claims, or any element of those alleged claims.  Defendants reserve the right to plead any and all additional affirmative defenses that may in the future become available to them as a result of the discovery of additional facts.

### First Affirmative Defense

The SAC and each purported claim for relief fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the doctrines of waiver, estoppel, ratification, and/or unclean hands.

## Third Affirmative Defense

Every alleged act or omission that is ascribed to Defendants in the SAC was done or omitted in good faith conformity with the rules and regulations of the Securities and Exchange Commission and, therefore, pursuant to Section 23(a) of the Securities Exchange Act of 1934, there is no liability for any act or omission so alleged.

## Fourth Affirmative Defense

The acts and practices of persons or entities other than Defendants, acting outside any authority granted them by Defendants, constitute causes of the alleged harm, if any, suffered by the purported plaintiff class members.

## Fifth Affirmative Defense

Intervening and superseding economic events caused any and all decline in the value of Company stock, or any other harm, which occurred prior to January 23, 2008.  Accordingly, this decline in value and/or harm is not recoverable.

## Sixth Affirmative Defense

Intervening and superseding economic events caused any and all decline in the value of their Company stock, or any other harm, which occurred on or after January 18, 2007, Accordingly, this decline in value and/or harm is not recoverable.

## Seventh Affirmative Defense

Each purported plaintiff class member would have acquired Company stock even if, when acquired, the purported plaintiff class member had known of the allegedly untrue

statements of material fact, omissions of material fact, or misleading statements or other wrongful conduct upon which Defendants' purported liability rests.

### Eighth Affirmative Defense

Plaintiffs and members of the purported class they seek to represent have failed to mitigate any damages they may have suffered.

### Ninth Affirmative Defense

Any recovery for damages allegedly incurred by plaintiffs, if any, is subject to offset in an amount including, but not limited to, any tax benefits actually received by plaintiffs throughout their investments.

### Tenth Affirmative Defense

Many alleged untrue statements of material fact, omissions of material fact, misleading statements, or other challenged statements made by any of the Defendants are rendered non-actionable by the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995, adding Section 21E to the Securities Exchange Act of 1934, as codified at 15 U.S.C. § 78u-5(c).

### Eleventh Affirmative Defense

Each of the members of the purported plaintiff class had actual or constructive knowledge of some or all of the facts alleged in the SAC upon which the Defendants' liability is asserted at the time that such class members purchased their shares of Company stock; therefore, each such purported plaintiff class member assumed the risk that the value of Company common stock could decline.

### Twelfth Affirmative Defense

Each of the members of the purported plaintiff class knew or should have known the financial condition of the Company and the risks associated with the Company's business, and in

failing to consider these risks, each such purported plaintiff class member assumed the risk that he might be damaged by acquiring Company stock.

## Thirteenth Affirmative Defense

Each of the members of the purported plaintiff class, at the time they acquired shares of Company stock, knew or in the exercise of reasonable care should have known of the facts with respect to the allegedly untrue statements of material fact, omissions of material fact, misleading statements or other actions by Defendants alleged in the SAC; each such purported plaintiff class member was negligent and this negligence was a cause-in-fact and a proximate cause of any alleged damages.  Therefore, such negligence bars recovery in whole or in part by each such purported plaintiff class member.

## Fourteenth Affirmative Defense

Defendants did not employ any device, scheme or artifice to defraud in connection with the purchse or sale of any SLM security.

## Fifteenth Affirmative Defense

Defendants did not make any misstatement or omission in connection with the purchase or sale of any SLM security.

## Sixteenth Affirmative Defense

Defendants did not act with the requisite scienter.

## Seventeenth Affirmative Defense

None of the alleged misrepresentations (by way of alleged misstatement or omission) or conduct was materially manipulative or deceptive in view of (*inter alia*) the total mix of information available to plaintiffs and members of the putative class.

**Eighteenth Affirmative Defense**

Some or all of the matters now claimed by the Complaint to be the subject of misrepresentations and omissions were publically disclosed or were in the public domain and, as such, were available to plaintiffs and member of the putative class.

**Nineteenth Affirmative Defense**

Defendants did not engage in any act, practice, or course of business which operated or would have operated as a fraud or decipt on any person in connection with the purchase or sale of SLM security.

**Twentieth Affirmative Defense**

Defendants did not create, or participate in the creation of, any misrepresentation or omission on which plaintiffs or members of the putative class relied.

**Twenty-First Affirmative Defense**

Plaintiffs have failed to meet their burden of pleading loss causation, and cannot demonstrate any link between the alleged misrepresentation and the drop in SLM's stock price.

**Twenty-Second Affirmative Defense**

This action is not properly maintained as a class action.

**Twenty-Third Affirmative Defense**

Plaintiffs' claims and/or the claims of any member of the putative class are barred, in whole or in part, to the entent that the damages sought exceed those permitted under the Securities Exchange Act of 1943, the Private Securities Litigation Reform Act, common law, or any other applicable statute, rule or regulation.

**Twenty-Fourth Affirmative Defense**

Albert Lord cannot be liable as a "controlling persons" under Section 10(a) of the

Securities Exchange Act because, among other things, there is no primary securities law

violation and Mr. Lord is not a culpable participant in any underlying fraud.

WHEREFORE, Defendants pray that this Court enter judgment as follows:

1.    That judgment be entered in favor of Defendants;

2.    That plaintiffs and the purported plaintiff class take nothing from Defendants by their

SAC, and that the same be dismissed with prejudice;

3.    For costs, attorneys' fees, expert witness fees, and court hearing costs incurred herein;

and

4.    For such other and further relief as this Court deems just and proper.

Dated:        October 29, 2010
              New York, New York

                        LATHAM & WATKINS LLP

                        By:    /s/ Jeff G. Hammel
                        Jeff G. Hammel
                        885 Third Avenue
                        New York, New York  10022-4834
                        Tel:  (212) 906-1200
                        Fax:  (212) 751-4864

                        Peter A. Wald
                        LATHAM & WATKINS LLP
                        505 Montgomery Street, Suite 2000
                        San Francisco, California  94111-6538
                        Tel:  (415) 391-0600

Fax:  (415) 395.8095

Laurie B. Smilan
Abid R. Qureshi
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel:  (202) 637-2200
Fax:  (202) 637-2201

*Attorneys for Defendants SLM Corporation and
Albert L. Lord*