UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SLM CORPORATION SECURITIES LITIGATION | Master File No. 08 Civ. 1029 (WHP) |

**MEMORANDUM OF LAW IN SUPPORT OF ABBEY SPANIER'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

ABBEY SPANIER RODD & ABRAMS, LLP
Arthur N. Abbey
aabbey@abbeyspanier.com
Stephen T. Rodd
srodd@abbeyspanier.com
Natalie S. Marcus
nmarcus@abbeyspaneir.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

Counsel for Westchester Capital Management Inc.

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ....................ii

I. INTRODUCTION....................1

II. PROCEDURAL HISTORY ....................2

III. ARGUMENT ....................4

A. Abbeys Spanier's Work Conferred a Substantial Benefit on the Class ....................4

B. Abbey Spanier Should Receive a Reasonable Fee Because of the Substantial Benefit It Conferred on the Class ....................8

1. The Time and Labor Expended by Counsel ....................8

2. The Magnitude and Complexities of the Litigation ....................9

3. The Risks of the Litigation ....................9

4. The Quality of Representation ....................10

5. The Requested Fee in Relation to the Settlement Is Reasonable ....................11

6. Public Policy Considerations....................12

IV. THE COSTS AND EXPENSES OF ABBEY SPANIER SHOULD BE REIMBURSED ....................13

CONCLUSION....................14

## TABLE OF AUTHORITIES

**Cases** **Page**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2007) ....................12

*Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) ....................8

*Burch v. SLM Corp.*, Nos. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP), 2008 U.S. Dist. LEXIS 55423 (S.D.N.Y. July 23, 2008) ....................3

*Goldberger v. Integrated Res.*, 209 F.3d 43 (2d Cir. 2000) ....................8

*In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3431 (ARR), 2001 U.S. Dist. LEXIS 19873 (E.D.N.Y. Aug. 17, 2001) ....................13

*In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229 (S.D.N.Y. 2005) ....................9

*In re Cendant Corporation Securities Litigation*, 404 F.3d 173 (3d Cir. 2005) ....................5

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 23, 2010) ....................11

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .......... 10, 12

*In re Generics Corp. of Am. Sec. Litig.*, No. 75 Civ. 6295, 1980 U.S. Dist. LEXIS 15730 (S.D.N.Y. Dec. 4, 1980) ....................12

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007) .................... 12, 13

*In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068 (E.D.N.Y. Aug. 25, 2005) ....................13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ....................10

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010)....................9

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 985 F. Supp. 410 (S.D.N.Y. 1997)....................10

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009)....................2, 3

*In re SLM Corp. Sec. Litig.*,
740 F.Supp. 2d 542 (S.D.N.Y. 2010)....................4, 5, 6, 7

*In re SLM Corp. Sec. Litig.*,
08 Civ. 1029 (WHP), 2012 U.S. Dist. LEXIS 8158 (S.D.N.Y. Jan. 24, 2012)....................4

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................12

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)....................12

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................10, 12

*Missouri v. Jenkins*,
491 U.S. 274 (1989)....................12

*Oh v. AT&T Corp.*,
225 F.R.D. 142 (D.N.J. 2004)....................13

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
623 F.3d 82 (2d Cir. 2010)....................4, 5, 8

*W.R. Huff Asset Management Co., L.L.C. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)....................2, 3

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. §78....................*passim*

**Rules**

Fed. R. Civ. P. 23....................3

Abbey Spanier Rodd & Abrams LLP ("Abbey Spanier") respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees and reimbursement of litigation expenses in connection with the Stipulation and Agreement of Settlement between Lead Plaintiff SLM Ventures and the Class and Defendants SLM Corporation ("SLM") and Albert L. Lord and pursuant to paragraph 3 of this Court's April 18, 2012 Order preliminarily approving the settlement. Abbey Spanier requests an award of legal fees consisting of the firm's lodestar as described below, plus a multiple of its lodestar equal to the multiple, if any, of the fee awarded to Lead Counsel in excess of Lead Counsel's lodestar. Abbey Spanier also moves for reimbursement of $19,603.11 in litigation expenses advanced for the benefit of the Class. The factual and legal support for Abbey Spanier's motion is set forth herein. Submitted herewith is the Declaration of Stephen T. Rodd in support of the motion, dated May 18, 2012 ("Rodd Decl.").

## I. INTRODUCTION

This motion asks this court to award fair and reasonable attorneys' fees and expenses to Abbey Spanier based on the significant contribution conferred by Abbey Spanier on the Class. Abbey Spanier is seeking fees *only* for its efforts and expenses for the benefit of the Class during the limited period starting with its appointment as Lead Counsel and Westchester Capital Management, Inc.'s ("Westchester Capital") appointment as Lead Plaintiff until the filing of the Consolidated Amended Class Action Complaint by Westchester Capital on December 8, 2008. No fees are sought for any work done during the period prior to Abbey Spanier's appointment as Lead Counsel, for the period after Westchester Capital's filing of the Consolidated Amended Class Action Complaint, nor for any work unrelated to prosecution of the merits of the Class's claims. All fees and expenses attributable to Abbey Spanier's initial investigation of the claims,

all motions related to lead plaintiff appointment and status, and all work related to this fee application, are excluded.

Subsequent to Westchester Capital's filing of its Consolidated Amended Class Action Complaint, Westchester Capital was removed as Lead Plaintiff and Abbey Spanier was removed as Lead Counsel following the Second Circuit's decision, *W.R. Huff Asset Management Co., L.L.C. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008). The court concluded that Westchester Capital, as investment advisor to the beneficial owner of SLM shares at issue, did not have standing to bring these securities fraud claims at the time the initial lead plaintiff motions were determined, and thus could not continue to act as lead plaintiff. *In re SLM Corp. Sec. Litig*., 258 F.R.D. 112, 116 (S.D.N.Y. 2009). The district court then appointed SLM Ventures as Lead Plaintiff and Girard Gibbs as Lead Counsel. *Id.* at 118.

As discussed in detail below, the information discovered by Abbey Spanier during their investigation into the alleged securities fraud, which was then incorporated into Westchester Capital's complaint and subsequently incorporated by counsel for SLM Ventures into their complaint, was crucial in defeating defendants' motion to dismiss and ultimately led to the settlement of the instant action. Counsel for SLM Ventures did not confer with Abbey Spanier during the course of the settlement negotiations, and this firm learned of the proposed settlement when the motion for preliminary approval was filed on March 30, 2012. Therefore, Abbey Spanier is making this separate motion for award of its reasonable attorneys' fees and reimbursement of litigation expenses that benefited the Class.

## II. PROCEDURAL HISTORY

On July 23, 2008, this court appointed Westchester Capital as Lead Plaintiff and Abbey Spanier as Lead Counsel pursuant to the Private Securities Litigation Reform Act, 15 U.S.C.

§78u-4 ("PSLRA"). *Burch v. SLM Corp.*, Nos. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP), 2008 U.S. Dist. LEXIS 55423 (S.D.N.Y. July 23, 2008).[1] Westchester Capital and Abbey Spanier diligently undertook their responsibilities as Lead Plaintiff and Lead Counsel and investigated the claims on behalf of the Class. Abbey Spanier retained investigators to locate and interview witnesses and also retained an accounting expert to assist with analyzing SLM's SEC filings as well as analyze various accounting issues. Rodd Decl. ¶2. Abbey Spanier prepared a detailed Consolidated Amended Class Action Complaint ("Westchester Capital Complaint") that was filed on December 8, 2008. Dkt. No. 70.

On December 19, 2009, SLM Ventures, a lead plaintiff previously rejected by the district court sought removal of Westchester Capital as Lead Plaintiff on the grounds that *Huff*, 549 F.3d at 100, compelled a ruling that Westchester Capital lacked Article III standing and was therefore an inadequate lead plaintiff subject to a unique defense. On April 1, 2009, the court ruled:

> Westchester Capital no longer satisfies the adequacy or typicality requirement—it faces unique legal issues that other class members do not. Even if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise. That uncertainty requires this Court to proceed with caution. Accordingly, this Court declines to approve the assignment of claims by Westchester Capital's two client funds.

*In re SLM Corp. Sec. Litig.*, 258 F.R.D. at 116.

On September 3, 2009, SLM Ventures filed a Second Amended Class Action Complaint ("SLM Ventures Complaint"). Dkt. No. 96. As discussed in detail below, SLM Ventures' complaint contains nearly identical allegations to those alleged in Westchester Capital's complaint. Based on these allegations, this court denied defendants' motion to dismiss in

[1] The PSLRA requires the court to appoint as lead plaintiff the person with the largest loss in the security and who can satisfy the requirements of Fed. R. Civ. P. 23. This court determined that Westchester Capital's loss, nearly 10 times the loss of the applicant with the next greatest loss, was the greatest and that Westchester Capital satisfied the Fed. R. Civ. P. 23 requirements. *Burch*, 2008 U.S. Dist. LEXIS 55423 at *16.

substantial part on September 24, 2010. *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542 (S.D.N.Y. 2010). Then on January 24, 2012, the court certified a class under Rule 23 of "all persons or entities who bought or otherwise acquired SLM Corporation common shares between January 18, 2007 and January 23, 2008, and who possess any of those shares over one or more the dates of December 19, 2007, January 3, 2008, and January 23, 2008." *In re SLM Corp. Sec. Litig.*, 08 Civ. 1029 (WHP) 2012 U.S. Dist. LEXIS 8158, at *30 (S.D.N.Y. Jan. 24, 2012).

On March 30, 2012, SLM Ventures filed a Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 164. Counsel for SLM Ventures did not contact Abbey Spanier to inform them that settlement negotiations had begun, ask Abbey Spanier to join the settlement negotiations, or inform Abbey Spanier that a settlement agreement had been entered into by the parties. Rodd Decl. ¶3. Nor did SLM Ventures offer to provide Abbey Spanier with any compensation for their work on the Westchester Capital Complaint, which conferred a substantial benefit on the Class. Rodd Decl. ¶3.

## III. ARGUMENT

### A. Abbeys Spanier's Work Conferred a Substantial Benefit on the Class

The Second Circuit has yet to address a situation such as this, where a lead plaintiff and its counsel conferred a substantial benefit on the class, are then removed as lead plaintiff and lead counsel because of circumstances beyond their control, and the newly appointed lead counsel settles the case without consulting with the former-lead counsel. The Second Circuit, however, has provided some guidance in *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82 (2d Cir. 2010).

The issue before the Second Circuit in *Victor* was "the proper framework for awarding attorneys' fees to non-lead counsel under the Private Securities Litigation Reform Action

('PSLRA') for work completed prior to the appointment of lead plaintiff." *Victor*, 623 F.3d at 86. The Second Circuit explained that:

> [W]ork completed by non-lead counsel prior to the appointment of lead plaintiff can confer substantial benefits on the class. For instance, potential lead counsel may conduct significant factual investigations, perform legal research on novel or innovative theories, and make strategic legal decisions affecting the content of the complaints and the ultimate course of the litigation. In such instances, when a substantial benefit has been conferred on the class, non-lead counsel are entitled to reasonable compensation.

*Id.* at *87.[2] Because the Second Circuit held that non-lead counsel could be compensated for a benefit they conferred on a class, then *a fortiori*, when a former-lead counsel confers a benefit on the class they should be compensated for their effort.

The Second Circuit explained that "comparing the complaint filed by non-lead counsel with other complaints filed in the action, including the complaint filed by lead counsel, will often show whether non-lead counsel contributed important factual information or innovative or novel legal theories." *Victor*, 623 F.3d at 88. As discussed in detail below, a comparison of Westchester Capital's complaint with the SLM Ventures Complaint demonstrates that Abbey Spanier conferred a substantial benefit on the class.

The district court initially noted in its ruling on the motion to dismiss that SLM Ventures alleged "that Defendants violated GAAP by resorting to lax underwriting standards and aggressive loan forbearance practices." *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d at 555. These allegations are also reflected in Westchester Capital's complaint. *See e.g.*, Westchester

[2] The Third Circuit reached a similar conclusion in *In re Cendant Corporation Securities Litigation*, 404 F.3d 173, 197 (3d Cir. 2005) noting "attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, will have a claim on a share of the class's recovery. In most cases, as in *Bank One*, we expect that lead plaintiffs who make use of earlier attorneys' legal or investigative work will request compensation for such attorneys. In the unlikely case that lead plaintiffs appropriate that work and attempt to deny compensation, we expect that the court will nonetheless reward the earlier attorney's work on behalf of the class."

Capital Complaint ¶¶ 11-13, 51-52, 57-88, 160 – 179 and SLM Ventures Complaint ¶¶ 71-95. The court also noted that SLM Ventures':

> [P]rincipal allegations regarding Sallie Mae's forbearance policies rely in large measure, on eleven confidential witness ("CWs"). CWs 2-12, employees at Sallie Mae call centers, are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." The CWs were positioned, albeit at low levels, to have knowledge of how Sallie Mae implemented its forbearance policy.

*In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d at 555 n.5 (internal citations omitted). Confidential witnesses 2 through 12 are the same confidential witnesses that are described in Westchester Capital's complaint, except SLM Ventures has changed the number associated with each confidential witness.[3] Attached as Exhibit D to the Rodd Declaration is a comparison of the paragraph references to each confidential witness in Westchester Capital's complaint to the SLM Ventures Complaint.

Defendants argued in their motion to dismiss that certain challenged statements in the SLM Ventures Complaint were forward-looking and, therefore, protected under the PSLRA. *In re SLM Corp. Sec. Litig.,* 740 F. Supp. 2d at 556. The court rejected their argument and explained that "Plaintiff [SLM Ventures] allege[d] that Defendants knew the statements regarding loan loss reserves were false when made, and thus neither the bespeaks caution doctrine nor the PLSRA safe harbor provision apply here." *Id.* at 556. These precise allegations were also made in Westchester Capital's complaint. *See* Westchester Capital Complaint ¶ 259 and SLM Ventures Complaint ¶ 358.

---

[3] Counsel for SLM Ventures purchased the witness memos generated by Abbey Spanier's investigator following SLM Ventures appointment as Lead Plaintiff. Rodd Decl. ¶13. Abbey Spanier's fee and expense request does not include the expenses incurred for retaining the investigator. Rodd Decl. ¶13.

The district court also held that SLM Ventures' complaint sufficiently alleged scienter. *In re SLM Corp. Sec. Litig.,* 740 F. Supp. 2d at 557. The SLM Ventures complaint "advance[d] three reasons why Defendants were motivated to inflate Sallie Mae's share price – the Flowers Acquisition, Lord's stock sales during the Class Period, and the equity forward contracts." *Id.* The same allegations were pled in Westchester Capital's complaint. *See* Westchester Capital Complaint ¶¶ 232 - 249 and SLM Ventures Complaint ¶¶ 197- 217.

Finally, the district held that SLM Ventures' complaint sufficiently pled loss causation. *In re SLM Corp. Sec. Litig.,* 740 F. Supp. 2d at 559. The SLM Ventures complaint alleged that "Sallie Mae stock dropped 21% on December 19, 2007 after Lord acknowledged that Sallie Mae was increasing its Private Loan loss reserves but refused to answer questions about the credit quality of Sallie Mae's PEL portfolio. Plaintiff also notes that Sallie Mae's share price dropped 13% on January 13, 2008 after Sallie Mae's announcement that it would 'be more selective in pursuing origination activity' and 'continue to focus on generally higher-margin Private Education Loans.'" *Id.* at 560. Similar allegations were made in Westchester Capital's complaint. *See* Westchester Capital Complaint ¶¶ 158-162; and SLM Ventures complaint ¶¶ 324-328. The district court concluded that "[b]ecause Plaintiff [SLM Ventures] has alleged a primary violation, Defendants' motion to dismiss the Section 20(a) claim against Lord is denied." *In re SLM Corp. Sec. Litig.,* 740 F. Supp. 2d at 560. Westchester Capital's complaint also alleged claims against Lord under Section 20(a). *See* Westchester Capital Complaint ¶¶ 264-265 and SLM Ventures Complaint ¶¶ 366-373.

Based on the foregoing, it is apparent that Abbey Spanier conferred a substantial benefit on the Class.

**B. Abbey Spanier Should Receive a Reasonable Fee Because of the Substantial Benefit It Conferred on the Class**

The PSLRA expressly permits the court to award attorneys' fees that are "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Goldberger v. Integrated Res.*, 209 F.3d 43, 47 (2d Cir. 2000) (internal citation omitted). In *Victor*, the Second Circuit noted that when "a district court has determined that non-lead counsel provided the class with a substantial benefit, the court must still assess whether class counsel's quantification of the benefits is 'reasonable.' In this effort, an examination of the lodestar is both relevant and useful." *Victor*, 623 F.3d at 88 (citing *Goldberger*, 209 F.3d at 50 ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.").

The Second Circuit has identified six factors for determining the reasonableness of a common fund fee: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation. . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (quoting *Goldberger*, 209 F.3d at 50). Abbey Spanier submits that under a lodestar analysis this fee application is reasonable.

**1. The Time and Labor Expended by Counsel**

Abbey Spanier spent 1657 hours litigating the merits of this case from the time it was appointed Lead Counsel until the filing of the Consolidated Amended Class Action Complaint on December 8, 2008. Rodd Decl. ¶4. These hours reflect the time spent by counsel gathering evidence for the Complaint, analyzing the Defendants' public filings and statements, consulting

with an accounting expert, engaging in discussions with an investigator, analyzing confidential witness reports, researching complex legal issues, and drafting the Westchester Capital Complaint. Rodd Decl. ¶6. Abbey Spanier's efforts were conducted efficiently and with cost-savings in mind. Rodd Decl. ¶6. Where feasible, work was assigned to associates and paralegals with lower billing rates to provide quality work at the lowest cost. Rodd Decl. ¶6.[4] Accordingly, the time and labor expended by Abbey Spanier amply supports the requested fee.

**2. The Magnitude and Complexities of the Litigation**

Courts have recognized that, as a general matter, securities class actions are highly complex. *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 331-32 (E.D.N.Y. 2010). This case had a unique set of circumstances that made the litigation complex. For example, as alleged in the Westchester Capital Complaint, this case involved complex allegations regarding accounting fraud such as setting loan loss reserves and the manipulation of forbearances practices. This case also posed other unique challenges such as establishing securities fraud without a restatement of the company's financial statements or an SEC investigation into the matter.

**3. The Risks of the Litigation**

Courts have held that the risk in pursuing the litigation is the "most important" factor. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (explaining that where a company has restated its financials supports a finding that the case falls along the low end of the continuum of risk). "[I]t is well-settled that the risk of the litigation must be measured as of when the case is filed." *Id.* at 234. The risks of this litigation were clear when the case was

---

[4] Abbey Spanier maintained contemporaneous time records throughout this litigation. Rodd Decl. ¶7. A detailed compilation of their activity and time will be submitted *in camera* upon request. A summary of such time is attached to the Rodd Declaration as Exhibit A.

filed. For example, SLM has not restated the financial statements that are at issue nor has the SEC conducted its own investigation into the allegations made in this case.

Furthermore, counsel for Westchester Capital accepted this matter on a contingent basis, with the attendant risk that they would receive no fee or expense reimbursement. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (noting "class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated"). "Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award." *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997). In view of the risks assumed by counsel for Westchester Capital, we respectfully submit that to fairly compensate for those risks, Abbey Spanier should receive a premium equivalent to the multiple, if any, received by Lead Counsel over their lodestar fee amount. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *53-54 (S.D.N.Y. July 27, 2007)(explaining the "lodestar multiplier enhances the lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.")(internal citations omitted). This request is inherently reasonable when considered in light of the risks undertaken.

**4. The Quality of Representation**

"To evaluate the quality of representation, courts in the Second Circuit review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *55 (S.D.N.Y. Dec. 23, 2009) (citation and quotation marks omitted).

As discussed in detail above, central allegations in Westchester Capital's complaint were incorporated into SLM Ventures' complaint. The work done by Abbey Spanier for which this award of fees is requested both contributed to the positive result on the motions to dismiss and presumably reduced the amount of time and labor that SLM Ventures' counsel had to expend preparing the SLM Ventures Complaint. Moreover, with respect to the backgrounds of the lawyers involved, Abbey Spanier has been prosecuting securities class actions for over forty years. The resume of Abbey Spanier is attached to the Rodd Declaration submitted herewith. *See* Rodd Declaration Exhibit C.

**5. The Requested Fee in Relation to the Settlement Is Reasonable**

Courts in the Second Circuit review the reasonableness of a request for attorneys' fees by reference to the percentage of the recovery sought. This percentage is then cross-checked against counsel's lodestar. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342, at *8-9 (E.D.N.Y. June 23, 2010). This analysis is of limited value with regard to this separate fee motion for a separate award of fees in the estimated range of 3 percent or less of the gross settlement fund. Abbey Spanier is not presently aware of the details of the application to be made by Lead Counsel, but leaves it to the court's discretion to determine the appropriate amount and percentage of any fees awarded.

A lodestar cross-check confirms the reasonableness of Abbey Spanier's fee request. Abbey Spanier devoted a total of 1657 hours for the benefit of the Class from the time it was appointed Lead Counsel until the filing of the Westchester Capital Complaint on December 8,

2008. Based on Abbey Spanier's current hourly rates, the lodestar for Abbey Spanier has a value of $962,740.[5] Rodd Decl. ¶8.

### 6. Public Policy Considerations

"Public policy concerns favor the award of reasonable attorneys' fess in class action securities litigation." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *52 (E.D.N.Y. Sept. 18, 2007). Furthermore, "to make certain that the public [interest] is represented by talented and experienced trial counsel, the renumeration should be both fair and rewarding." *Eltman v. Grandma Lee's Inc.*, No. 82 Civ. 1912, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 29, 1986)(citation and internal quotation omitted); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (explaining "courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis…on behalf of those who otherwise could not afford to prosecute."). Westchester Capital's counsel promoted

---

[5] The Second Circuit has explained that the hourly rates to be applied in calculating the lodestar are "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2007). Pursuant to the "forum rule," reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits. *Id.* at 185. Further, the Supreme Court and Second Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (quoting *In re Generics Corp. of Am. Sec. Litig.*, No. 75 Civ. 6295, 1980 U.S. Dist. LEXIS 15730, at *5-6 (S.D.N.Y. Dec. 4, 1980)); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). The best indicators of the "market rate" for plaintiffs' securities class action counsel are the rates charged by New York and Washington, D.C. firms, including those that defend class actions on a regular basis. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (asserting the standard for proper hourly rate is the "rate charged in the community where the services were performed for the type of service performed by counsel"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.* 2007 U.S. Dist. LEXIS 57918, at *54-55 n.6 (holding the market rate applied is the hourly rate in the community where counsel practices). The rates of counsel here are in-line with the general rates of firms practicing on both sides of the aisle in securities class action litigation.

the public interest by conducting an extensive investigation into Defendants' alleged wrongdoing and it is in the public interest for them to be paid a reasonable attorney's fee.

In short, the *Goldberger* analysis strongly supports the fee requested here.

## IV. THE COSTS AND EXPENSES OF ABBEY SPANIER SHOULD BE REIMBURSED

"Courts routinely grant the expense requests of class counsel." *Gilat,* 2007 U.S. Dist. LEXIS 68964, at *60 (citing and quoting *In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *58 (E.D.N.Y. Aug. 25, 2005)); *In re Arakis Energy Corp. Sec. Litig.*, No. 95 CV 3431 (ARR), 2001 U.S. Dist. LEXIS 19873, at *57 n.12 (E.D.N.Y. Aug. 17, 2001) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.").

Abbey Spanier expended $19,603.11 in litigation expenses related only to the work performed for the benefit of the Class. A summary expense report is submitted herewith itemizing categories of expenses and the amount thereof. Exhibit B to Rodd Declaration. They are the types of expenses deemed by courts to be reasonably incurred in the prosecution of a class action. *Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) ("photocopying expenses, telephone and facsimile charges, and postal, messenger, and express mail service charges are reasonably incurred in connection with the prosecution of a large litigation").

**CONCLUSION**

For the reasons set forth above, Abbey Spanier respectfully requests that the Court award Abbey Spanier attorneys' fees and litigation expenses for its work for the benefit of the Class during the period that the firm acted as Lead Counsel for the Class, including a multiple of such fees, as the Court may deem appropriate, for the quality of effort and risk undertaken.

Dated: May 18, 2012

Respectfully submitted,

ABBEY SPANIER RODD & ABRAMS, LLP

By: __/s/ Arthur N. Abbey____________

Arthur N. Abbey
aabbey@abbeyspanier.com
Stephen T. Rodd
srodd@abbeyspanier.com
Natalie S. Marcus
nmarcus@abbeyspaneir.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

Counsel for Westchester
Capital Management Inc.